**NAVARRO v. LANDON, District Director, Los Angeles Dist., Immigration and Naturalization Service.**

**Civ. No. 13869–WB.**

United States District Court
S. D. California, C. D.

Dec. 18, 1952.

The plaintiff is a native and national of Ecuador, who last entered the United States on September 20th, 1936, as Vice Consul of Ecuador. In December, 1936, upon change of government administration in Ecuador, the plaintiff was ousted from his diplomatic post, but continued to reside in the United States though failing to maintain his exempt status as a foreign government official.

On October 23, 1942, the plaintiff executed DSS Form 301, "Application By Alien for Relief from Military Service", which application included the statement, "I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States."[1] At the time of said application, Ecuador was neutral in the then existing war. On January 12, 1951, the Secretary of State of the United States approved the institution of deportation proceedings against the plaintiff, in accordance with Section 15 of the Immigration Act of 1924, 8 U.S.C.A. § 215. On April 25, 1951, following a hearing at which plaintiff was present with counsel, the plaintiff was found to be subject to deportation in that he had remained in the United States after failing to maintain the exempt status under which he was admitted.

On August 21, 1952, the Commissioner of Immigration and Naturalization ordered plaintiff's deportation after finding that, by filing DSS Form 301, requesting exemption from military service, he had rendered himself ineligible for citizenship and was, therefore, statutorily ineligible for suspension of deportation.[2]

Newman & Newman, Los Angeles, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., and Robert K. Grean, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

This action for declaratory relief has been submitted to the court on a stipulation of facts.

1. Section 3(a) of the Selective Training and Service Act of 1940, 54 Stat. 885, as amended, 55 Stat. 845, provides in part: "Except as otherwise provided in this Act, every male citizen of the United States, and every other male person *residing* in the United States * * * shall be liable for training and service in the land or naval forces of the United States: Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States * * *." (Emphasis added.)

2. Section 19(c), as amended, 62 Stat. 1206, of the Immigration Act of 1917, 39 Stat. 889, 8 U.S.C.A. § 155(c) reads in part: "(c) In the case of any alien * * *

It is the contention of the plaintiff that, when he made application for relief from military service on October 23, 1942, he was not liable for registration and service because he was not "residing" in the United States; therefore, his application for relief had no legal effect and did not render him ineligible for naturalization; consequently, he is not ineligible for suspension of deportation under 8 U.S.C.A. § 155(c). The plaintiff relies on the case of McGrath v. Kristensen, 340 U.S. 162, 71 S.Ct. 224, 231, 95 L.Ed. 173.

The Kristensen case turned on the question of whether the alien was "residing" in the United States within the meaning of the Selective Training and Service Act of 1940 and regulations issued thereunder, at the time of his application. See margin note (1). The Kristensen court set out the regulations prescribed by the President under the authority of the Act,[3] and then

pointed out that, under the regulations, Kristensen, who entered the United States in August, 1939, was not classified as a resident neutral alien until May 16, 1942. Kristensen's application for relief from service was made on March 30, 1942, *before he was classified as a resident.* Kristensen, not being a "male person residing in the United States" at the time he made the application, could not then be liable for service. The court said: "As there was no 'liability' for service, his act in applying for relief from a nonexistent duty could not create the bar against naturalization. By the terms of the statute, that bar only comes into existence when an alien resident liable for service asks to be relieved."

As in the case of Kristensen, May 16, 1942, was the date of this plaintiff's classification as a resident neutral alien, but, unlike Kristensen, his application for relief from liability for service was made

who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may * * * (2) suspend deportation of such alien *if he is not ineligible for naturalization* * * *." (Emphasis added.)

3. "(19) 'Sec. 611.12 *When a nondeclarant alien is residing in the United States.* Every male alien who is now in or hereafter enters the United States who has not declared his intention to become a citizen of the United States, unless he is in one of the categories specifically excepted by the provisions of sec. 611.13, is a "male person residing in the United States" within the meaning of section 2 and section 3 of the Selective Training and Service Act of 1940, as amended.

" 'Sec. 611.13 *When a nondeclarant alien is not residing in the United States.* (a) A male alien who is now in or hereafter enters the United States who has not declared his intention to become a citizen of the United States is not a "male person residing in the United States" within the meaning of section 2 or section 3 of the Selective Training and Service Act of 1940, as amended: * * *

" '(6) If he has entered or hereafter enters the United States in a manner prescribed by its laws and does not remain in the United States after May 16, 1942, or for more than 3 months following the date of his entry, whichever is the later.

" '(b) When a male alien who has not

declared his intention to become a citizen of the United States has entered or hereafter enters the United States in a manner prescribed by its laws and remains in the United States after May 16, 1942, or for more than 3 months following the date of his entry, whichever is the later, he is "a male person residing in the United States" within the meaning of section 2 and section 3 of the Selective Training and Service Act of 1940, as amended, unless he has filed an Alien's Application for Determination of Residence (Form 302) in the manner provided in section 611.21 and such application is either (1) pending or (2) has resulted in a determination that he is not "a male person residing in the United States" within the meaning of section 2 or section 3 of the Selective Training and Service Act of 1940, as amended, in either of which events he shall not be considered as "a male person residing in the United States" within the meaning of section 2 or section 3 of the Selective Training and Service Act of 1940, as amended, during the period when such application is pending or during the period covered by the Alien's Certificate of Nonresidence (Form 303) issued to him as a result of the determination that he is not "a male person residing in the United States" within the meaning of section 2 or section 3 of the Selective Training and Service Act of 1940, as amended. (54 Stat. 885; 50 U.S.C., Sup. 301–318, inclusive; E.O.No.8545, 5 F.R. 3779).' "

*after* May 16, 1942, and at a time when the liability existed. When he applied for relief from service on October 23, 1942, he was a resident neutral alien liable for military service, and his application created the bar against naturalization; therefore, he is ineligible for suspension of deportation under 8 U.S.C.A. § 155(c).

The pleadings that have been filed in this case have created an unusual situation deserving of comment. In the original complaint the plaintiff alleged that he was a legal resident of the United States, lawfully admitted to this country on an immigration visa as a non-quota immigrant for permanent residence; that an order for his deportation had been issued and the District Director of Immigration threatened to deport him. The defendant filed a motion to dismiss on the grounds of failure to join an indispensable party, viz., the Commissioner of Immigration and Naturalization. This court ruled in favor of the plaintiff and filed a memorandum of decision[4] pointing out that the issue raised by the complaint was whether the plaintiff was a legal resident entitled to permanent residence. If the court determined the issue in favor of the plaintiff, the District Director would be ordered to desist in his efforts to disturb plaintiff in the enjoyment of his legal residence, and the matter would be at an end. The decree would effectively grant the relief sought by the plaintiff without requiring the District Director's superior to do a single thing; therefore, the superior was not an indispensable party.

After the court's opinion was filed, the plaintiff filed an amended complaint embodying an entirely different theory in a second cause of action. The first cause of action was then abandoned and the matter was submitted to the court on the second cause of action and a stipulation of facts.

▓▓▓ Had the motion to dismiss for failure to join an indispensable party been directed to the alleged cause of action now before the court, it would have been granted. The present theory of the complaint is that the plaintiff is now, and since December, 1936, has been, a deportable alien; that

as a deportable alien of good moral character he is eligible for the discretionary relief which the Attorney General is authorized to exercise under the provisions of 8 U.S.C.A. § 155(c), see margin note (2); that the Attorney General refuses to exercise his discretion and plaintiff seeks the aid of this court to compel its exercise. The relief which plaintiff seeks would not be available in a decree which expended itself on the District Director, who is the only defendant before this court. To be effective the decree would necessarily require affirmative action on the part of the District Director's superior; therefore, the superior is an indispensable party. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; Daggs v. Klein, 9 Cir., 169 F.2d 174.

The defendant's counsel is requested to prepare findings in accordance with Local Rule 7.

---

4. Navarro v. Landon, D.C., 106 F.Supp. 73.