## CEBALLOS (Y ARBOLEDA) *v.* SHAUGHNESSY, DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE.

No. 71.  Argued January 16–17, 1957.—Decided March 11, 1957.

*Sidney Kansas* argued the cause and filed a brief for petitioner.

*Oscar H. Davis* argued the cause for respondent. On the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Beatrice Rosenberg* and *J. F. Bishop.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This declaratory judgment action was brought by petitioner, in March 1955 in the District Court for the Southern District of New York, to obtain a judgment against the District Director of Immigration declaring that petitioner was eligible for suspension of deportation and restraining the Director from taking him into custody for deportation.[1] The District Court dismissed the complaint, without reaching the merits, upon the procedural ground "that the Attorney General [of the United States] and/or the Commissioner [of Immigration] are indispensable parties to the instant action." [2] The Court of Appeals for the Second Circuit affirmed, not only for the reason given by the District Court, but also upon the ground that, because the petitioner is "an alien who 'has made application' to be relieved from military service," he is debarred from citizenship as a matter of law and "hence is not eligible for an order suspending deportation." [3] This Court granted certiorari.[4]

Deportation proceedings had been instituted because petitioner had entered the United States on April 2, 1951, on a temporary visa and remained beyond the period for

---

[1] The action was instituted pursuant to § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U. S. C. § 1009, and the general jurisdictional provision of the Immigration and Nationality Act of 1952, 66 Stat. 230, 8 U. S. C. § 1329.

[2] 130 F. Supp. 30, 31.

[3] 229 F. 2d 592, 593.

[4] 351 U. S. 981.

which he was admitted. Petitioner was found deportable but was given permission to depart voluntarily, in lieu of deportation. Petitioner's timely application for suspension of deportation under § 19 (c) of the Immigration Act of 1917, as amended,[5] was denied by the Immigration and Naturalization Service because it found that petitioner did not satisfy a prerequisite for the application of that section—eligibility for naturalization. His ineligibility was based on a finding that in August 1943 petitioner, as a citizen and subject of Colombia, then a World War II neutral, applied under § 3 (a) of the Selective Training and Service Act of 1940, as amended, for relief from service with the United States armed forces. Section 3 (a) provided that "any person who makes such application shall thereafter be debarred from becoming a citizen of the United States." [6]

[5] Section 19 (c) of the Immigration Act of 1917, as amended, provided in pertinent part:

"In the case of any alien . . . who is deportable under any law of the United States and who has proved good moral character for the preceding five years, the Attorney General may (1) permit such alien to depart the United States to any country of his choice at his own expense, in lieu of deportation; or (2) suspend deportation of such alien if he is not ineligible for naturalization . . . if he finds (a) that such deportation would result in serious economic detriment to a citizen . . . who is the spouse . . . or minor child of such deportable alien . . . ." 39 Stat. 889, as amended, 54 Stat. 671, 62 Stat. 1206, 8 U. S. C. (1946 ed., Supp. V) § 155.

[6] Section 3 (a) of the Selective Training and Service Act of 1940, as amended, provided in pertinent part:

"Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of eighteen and forty-five . . . shall be liable for training and service in the land or naval forces of the United States: *Provided,* That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed

The petitioner was admitted to the United States for permanent residence in February 1942, during World War II. On June 16, 1943, he executed Selective Service System Form DSS 304, "Alien's Personal History and Statement," which gave the alien a choice of inserting "do" or "do not" in the statement: "I ..... object to service in the land or naval forces of the United States." The petitioner inserted the word "do." The form contained this notice:

". . . If you are a citizen or subject of a neutral country, and you do not wish to serve in the land or naval forces of the United States, you may apply to your local board for Application by Alien for Relief from Military Service (Form 301) which, when executed by you and filed with the local board, will relieve you from the obligation to serve in the land or naval forces of the United States, but will also debar you from thereafter becoming a citizen of the United States." [7]

On August 26, 1943, the petitioner executed Form DSS 301, "Application by Alien for Relief from Military Service." The form contained the following paragraph:

"I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the act of Congress, approved December 20, 1941. I understand that the making of this application to be relieved from such liability

by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States . . . ." 54 Stat. 885, as amended, 55 Stat. 845, 56 Stat. 1019, 50 U. S. C. App. (1940 ed., Supp. II) § 303 (a).

[7] This form was authorized by Selective Service System Order No. 75, 7 Fed. Reg. 3424.

will debar me from becoming a citizen of the United States. . . ." [8]

Selective Service Regulations required the local board to follow prescribed formalities to place a neutral applying for relief from service in Class IV–C and to notify the alien of the classification.[9] The board did not comply with these regulations in petitioner's case. Its first formal action was taken after the Selective Service System notified the board, on December 20, 1943, that Colombia, on November 26, 1943, had changed its neutral status to that of a cobelligerent with the United States. On January 27, 1944, five months after the petitioner filed the Form DSS 301, the board notified the petitioner that he was classified I–A, available for military service, and ordered him to report for preinduction physical examination. He reported as ordered, but failed to pass the physical examination and, on March 2, 1944, was reclassified IV–F, physically defective.

The petitioner argues that neither the Attorney General nor the Commissioner of Immigration is a necessary party to this action. The respondent offers no argument in opposition. We hold that neither the Attorney General nor the Commissioner is a necessary party. This Court in *Shaughnessy* v. *Pedreiro,* 349 U. S. 48, held that determination of the question of indispensability of parties is dependent, not on the nature of the decision attacked, but on the ability and authority of the defendant before the court to effectuate the relief which the alien seeks. In this case the petitioner asks to have the order of deportation suspended and to restrain the District Director from deporting him. Because the District

---

[8] This form was authorized by Selective Service System Order No. 54, 7 Fed. Reg. 1104.

[9] 32 CFR, 1943 Cum. Supp., § 622.43 (b); 32 CFR, 1943 Cum. Supp., § 623.1; 32 CFR, 1943 Cum. Supp., § 623.61.

Director is the official who would execute the deportation, he is a sufficient party. It is not a basis for distinction of *Pedreiro* that suspension of deportation, rather than deportation itself, is involved in this action.[10]

The petitioner's argument on the merits challenges the holding of the Court of Appeals that the execution and filing of Form DSS 301 had the effect as a matter of law of debarring him from becoming a citizen of the United States. He contends that debarment could result only if the local board affirmatively granted the relief applied for by classifying him IV–C on its records and giving him notice of its action. We hold that the petitioner's voluntary act of executing and filing, and allowing to remain on file, the legally sufficient application Form DSS 301 effected his debarment from citizenship under § 3 (a).[11] The explicit terms of the section debar the neutral alien "who makes such application" for immunity from military service.

Legislative history shows this to be the effect contemplated by Congress.[12] This same construction has been adopted in the few court decisions which refer to the sec-

---

[10] The Court of Appeals made that distinction and held that not *Pedreiro* but its decision in *De Pinho Vaz* v. *Shaughnessy*, 208 F. 2d 70, controlled. 229 F. 2d, at 593.

[11] The petitioner's claim that he executed the application in the belief that he was required to do so to obtain assignment to a Latin American contingent of the United States Army was rejected, after hearing, by the Immigration and Naturalization Service. In fact, the Board of Immigration Appeals found that petitioner "fully understood the legal consequences of his action and that he was not duly influenced by other considerations." Cf. *Moser* v. *United States*, 341 U. S. 41.

[12] This appears in both the House and Senate Reports. The House Report states:

". . . In the case of citizens or subjects of any neutral country, special provision is made to enable them, upon application, to be relieved from the liability for service, but *the making of such appli-*

tion,[13] and administrative construction has consistently given the section this meaning.[14] The neutral alien in this country during the war was at liberty to refuse to bear arms to help us win the struggle, but the price he paid for his unwillingness was permanent debarment from United States citizenship.

The petitioner argues that in any event § 315 of the Immigration and Nationality Act of 1952,[15] and not

*cation* will debar them from becoming citizens of the United States. . . ." (Emphasis added.) H. R. Rep. No. 1508, 77th Cong., 1st Sess. 4.

The Senate Report states:

". . . Under the bill reported by the committee, aliens would be liable whether or not they had declared their intention to become citizens. However, aliens who are citizens or subjects of a neutral country would be relieved of liability upon making application in the manner prescribed by the President, but *the making of such application* will debar them from ever becoming citizens of the United States. . . ." (Emphasis added.) S. Rep. No. 915, 77th Cong., 1st Sess. 2.

[13] *Mannerfrid* v. *United States,* 200 F. 2d 730; *Navarro* v. *Landon,* 108 F. Supp. 922; see *Machado* v. *McGrath,* 90 U. S. App. D. C. 70, 74, 193 F. 2d 706, 710. See *McGrath* v. *Kristensen,* 340 U. S. 162, 172: "By the terms of the statute, that bar only comes into existence when an alien resident liable for service *asks* to be relieved." (Emphasis added.) See *Moser* v. *United States,* 341 U. S. 41, 45: Section 3 (a) "imposed the condition that neutral aliens residing here who *claimed* such immunity would be debarred from citizenship." (Emphasis added.)

[14] See quotations from Forms DSS 304 and DSS 301 in text. And see, Selective Service Regulations, § 622.43, effective March 16, 1942, 7 Fed. Reg. 2087. Section 622.43, as revised, effective October 1, 1943, 8 Fed. Reg. 13672, read: ". . . (a) In Class IV–C shall be placed any registrant: . . . (2) Who is an alien and who is a citizen or subject of a neutral country . . . and who . . . files with his local board an Application by Alien for Relief from Military Service (Form 301) . . . ."

[15] The Immigration and Nationality Act of 1952, § 315, provides:

"(a) Notwithstanding the provisions of section 405 (b), any alien who applies or has applied for exemption or discharge from training

§ 3 (a) of the Selective Training and Service Act of 1940, governs this case. Section 315 of the 1952 Act enacts a two-pronged requirement for the determination of permanent ineligibility for citizenship: the alien must be one "who applies or has applied for exemption," and also one who "is or was relieved or discharged from such training or service on such ground." That section has no application here. The 1952 law had not been enacted when the petitioner applied for relief from deportation in 1951 [16] and by its terms is expressly made inapplicable to proceedings for suspension of deportation under § 19 of the Immigration Act of 1917 pending, as here, on the effective date of the 1952 law.[17]

*Affirmed.*

---

or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien." 66 Stat. 242, 8 U. S. C. § 1426.

[16] The 1952 law became effective in December 1952.

[17] The Immigration and Nationality Act of 1952, § 405 (a), provides:

"Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed . . . to affect . . . proceedings . . . brought, . . . or existing, at the time this Act shall take effect; but as to all such . . . proceedings, . . . the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. . . . An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended . . . which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection." 66 Stat. 280, 8 U. S. C. § 1101, note.