**In re Petition for Naturalization of Charles CALVO.**

**No. 100858.**

United States District Court
D. New Jersey.

May 8, 1958.

Charles Stanziale, Newark, N. J., for petitioner.

Herman Kaner, Naturalization Examiner Department of Justice, Newark, N. J., for Immigration and Naturalization Service.

WORTENDYKE, District Judge.

The petitioner, a national of Spain, was born on May 22, 1924, and entered the United States with his parents when five years of age. He has been lawfully admitted for permanent residence in this country since September 18, 1929, and is now 33 years old. Petitioner is mar-

ried, and is the father of an infant son who is approximately four months old. He has completed ten years of education in this country, having progressed through the second year of High School in the United States.

On March 8, 1943, petitioner went to the Selective Service Board and advised the clerk present that his mother was ill and suffering from a cardiac condition and requested that he be given a year or at least six months before going into the military service. Petitioner claims that it was not his intention to refuse to help the United States in its struggle during World War II, but merely to request a deferment because of his mother's illness. He was classified 4–C on March 15, 1943, as required by law, and was relieved from military service or training on the ground of alienage, pursuant to his application, after he had executed form DSS–301 under 50 U.S. C.A.Appendix § 303(a) * which relieves nationals of a neutral nation (as Spain then was) from liability for military service, but which exacts a penalty for such exemption of permanent debarment from United States citizenship. Petitioner admits that he signed such form. He asserts, however, that he did not fully understand what he was signing and that the effect of his signing was not fully explained to him; but I find that petitioner carefully read form DSS–301 before signing it, that his education and training were sufficient to enable him to comprehend the benefit conferred and the penalty incurred thereby and that the Clerk before whom he signed in no way misled the petitioner. Therefore, the question presented is whether the petitioner is permanently barred from naturalization under Section 315 of the Immigration and Nationality Act of 1952 (8 U.S.C.A. § 1426) and Section 3(a) of the Selective Training and Service Act of 1940, as amended.

The present Petition for Naturalization having been filed on December 18,

---

* Now 50 U.S.C.A.Appendix, § 461.

1956, under the general provisions of the Immigration and Nationality Act of 1952, this case is accordingly governed by that Act and not by Section 3(a) of the Selective Training and Service Act of 1940, as amended, 50 U.S.C.A.Appendix, § 303(a) **. Section 405(b) of the 1952 Act is embodied in a note under 8 U.S.C.A. § 1101 designated as "Savings Clause", subdivision (b) of which reads as follows:

> "(b) Except as otherwise specifically provided in title III * * * any petition for naturalization heretofore filed which may be pending at the time this Act (this chapter) shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed."

As stated by Mr. Justice Brennan in Ceballos v. Shaughnessy, 1957, 352 U.S. 599, at page 606, 77 S.Ct. 545, at page 549, 1 L.Ed.2d 583:

> "Section 315 of the 1952 Act enacts a two-pronged requirement for the determination of permanent ineligibility for citizenship: The alien must be one 'who applies or has applied for exemption,' and also one who 'is or was relieved or discharged from such training or service on such ground.'"

Despite the foregoing double requirement of the 1952 Act, as opposed to the single requirement under Section 3(a) of the Selective Training and Service Act of 1940, as amended, that such preclusion takes place where the alien merely *applies* for exemption from military service, I feel that both requirements have been met in the present case, and that the Petition for Naturalization should be denied. The Ceballos case is strikingly in point, factually, although decided under Section 3(a) of the 1940 Act. However, it is at least authority for the proposition that one who voluntarily executed and filed a form DSS–301, and allowed it to remain on file for a period of approximately ten years, falls within the category of one who has applied for the exemption. The second element required by the 1952 Act, viz., that the petitioner was relieved or discharged from such training or service on the ground of alienage, is supplied by the indisputable fact that he was classified 4–C, and was exempted from military service or training, as required by law, and that he had not taken any step to change that classification during the existence of the Selective Service Law, which expired in March, 1947.

Reverting to the fact of execution of form DSS–301, we find abundant precedent in Petition of Miranda, D.C.E.D. N.Y.1953, 111 F.Supp. 481, for refusing to recognize as valid the defense of ignorance of the legal effect thereof asserted by petitioner. In that case, the Court was dealing with a petitioner who said that he did not speak English, did not read the paper, that it was not translated or otherwise explained to him, and, therefore, should be disregarded. In disposing of this contention the Court stated as follows, at page 481:

> "To accede to this view would require the Court in effect to rule that Local Board 24 accepted a document which had no valid inception. It must be apparent that to take such a position after the lapse of ten years and in the absence of testimony from the clerk or any member of the Board would constitute an arbitrary ruling upon the methods pursued by the Board in discharging its difficult functions, which is a position that could be justified only under very unusual circumstances.
>
> "Such a decision moreover would open the door to an indefinite number of applications having the same end in view which would be supported only by a registrant's assertions, which would doubtless be colored by his own interest in the outcome thereof. It is not believed that the Court is free to indulge in any such

** Now 50 U.S.C.A.Appendix, § 454.

elastic construction of its functions."

More recently, in the case of In re Skender's Petition, 2 Cir., 1957, 248 F.2d 92, the Court reached a like result despite the fact that the exemption from such service had been granted although the petitioner was not then legally entitled to the exemption. The Court took the view that he had freely applied for the exemption, and that the fact that it had been granted without right to such relief, offered no basis for avoidance by him of the consequences of his act. The Court said, at page 95:

"After all, if debarment from citizenship is deemed a just fate for an alien who sought and was accorded an exemption to which he was entitled, it is not unduly harsh for one who (a) sought an exemption to which he was entitled and (b) was accorded an exemption to which he was *not* entitled. Section 315(a) did not leave it open to the appellant to attack the validity of the very classification which he sought on the ground that when made it gave him an exemption to which he was not entitled."

Petitioner's reliance upon Moser v. United States, 1951, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729, is misplaced because petitioner in that case filed an application for exemption after being specifically advised, by the Legation of his country of nationality by means of a writing attached to the form he executed, that such execution would not result in a waiver of his right to apply for United States citizenship, and also because a treaty between the United States and Switzerland exempted him from personal military service to the United States. Petition of Miranda, supra.

Petitioner is, therefore, debarred from becoming a citizen of the United States and the Petition for Naturalization is denied.

This opinion shall be deemed to constitute my findings of fact and conclusions of law, and an order may be presented in conformity therewith.