Janis Osvald DOMBROVSKIS, Tomislav Dragoievich, Bozidar Dunich, Ernest Vilhelms Elerts, Nikolo Grancaric, Sime Grancaric Joso Grando, Mate Gregov, Krizan Ivanov, Slavko Jezina, Ljubo Komadina, Ivan Latkovic, Cesar Malesic, Sime R. Martinovich, Sime Matesic, Joso Patrk, Svetko Petric, Ante Spaleta, Pere Stojak, Giovanni Stroligo, Sime Telac, Joseph Zuzich, and Frank Pavlak, Plaintiffs

v.

P. A. ESPERDY, District Director, Immigration and Naturalization Service, United States Department of Justice, Defendant.

United States District Court
S. D. New York.
June 29, 1960.

Edith Lowenstein, New York City, for plaintiffs.

S. Hazard Gillespie, Jr., U. S. Atty., for S. D. New York, New York City, Roy Babitt, Sp. Asst. U. S. Atty., New York City, of counsel, for defendant.

DIMOCK, District Judge.

In this action for a declaratory judgment defendant moves under Rule 12(c) of the Federal Rules of Civil Procedure for dismissal of plaintiffs' claim, denom-

inated the "First Cause of Action" and which I shall hereinafter refer to as the "first claim", on the grounds that (1) there is no longer an "actual controversy" between the parties with respect thereto as required by the Declaratory Judgments Act, 62 Stat. 964, as amended, 28 U.S.C. § 2201, and (2) plaintiffs have failed to join an indispensable party, the Secretary of State. Since affidavits and exhibits have been submitted by the parties, the motion will be treated as one for summary judgment under Rule 56.

Defendant moves also for summary judgment under Rule 56 with respect to plaintiffs' "Second Cause of Action", which I shall hereinafter refer to as the "second claim", on the grounds that (1) there is no genuine issue as to any material fact, and (2) defendant is entitled to judgment as a matter of law.

Unless I deny defendant's motions, plaintiffs cross-move, pursuant to Rule 56(f), for an order postponing and continuing the hearing of defendant's motions until such time as plaintiffs may have taken the depositions of certain persons, named and unnamed.

The affidavits and exhibits show that plaintiffs are alien seamen, nationals of Yugoslavia or Latvia, who reside in this country and are admittedly deportable as illegal entrants or as temporary entrants who overstayed the period allowed them for shore leave. Subsequent to the enactment of section 15(a) (3) of the Act of September 11, 1957, 71 Stat. 643, plaintiffs filed applications with the Immigration and Naturalization Service for adjustment of their status from nonimmigrants to permanent-resident immigrants under section 245 of the Immigration and Nationality Act, 66 Stat. 217, 8 U.S.C. § 1255 (later amended by 72 Stat. 699), or for pre-examination to determine their admissibility as immigrants under part 235a of Title 8, Code of Federal Regulations. A prerequisite to the granting .of either adjustment of status or pre-examination was the availability of an immigrant visa.[1] Part 235a was revoked on August 12, 1959, 24 Fed.Reg. 6477.

Defendant says, without contradiction by plaintiffs, that the immigration quotas to which each of the plaintiffs belong were and continue to be oversubscribed and that their eligibility for adjustment of status thus depends on the availability of non-quota visas. Section 15(a) (3) of

1. The "Preexamination" regulations, 8 C.F.R. part 235a, provided:

"§ 235a.1 *Application.* Any alien, except a citizen of Canada, Mexico, or islands adjacent to the United States, who entered the United States prior to January 1, 1957, and has been continuously physically present in the United States since that date, shall apply for preexamination on Form I–63 if he intends to apply to a consular officer of the United States in Canada for an immigrant visa and he believes that he will be admissible to the United States under all the provisions of the immigration laws if in possession of an immigrant visa; that he will be able to obtain the prompt issuance of an immigrant visa, and that he is a person of good moral character. * * *

"§ 235a.11 *Disposition of case.* If preexamination has been authorized, the applicant shall not be preexamined until he has presented written assurance from the consular officer of the United States in Canada that a visa will be promptly available if upon personal ex- amination he is found eligible for a visa, and a report from a medical officer of the United States Public Health Service setting forth findings of the applicant's mental and physical condition. * * *"

Section 245 of the Immigration and Nationality Act provides: "(a) The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted by the Attorney General in his discretion (under such regulations as he may prescribe to insure the application of this paragraph solely to the cases of aliens who entered the United States in good faith as nonimmigrants) to that of an alien lawfully admitted for permanent residence as a quota immigrant or as a nonquota immigrant under section 1101(a) (27) (A) of this title, if * * (3) a quota or nonquota immigrant visa was immediately available to him at the time of his application for adjustment, (4) a quota or nonquota immigrant visa is immediately available to him at the time his application is approved, * *."

the Act of September 11, 1957 provides for the allotment and issuance, by consular officers of the Department of State, of special non-quota immigrant visas to aliens who are refugee-escapees as defined in subsection (c) (1) of section 15. The administration of section 15 is handled by the Office of Refugee and Migration Affairs, Department of State, hereinafter ORMA. Plaintiffs, therefore, submitted applications to defendant, for transmittal to ORMA, for the issuance of refugee-escapee visas. At the time that, or shortly after, plaintiffs submitted their applications for visas to defendant, the regulations of the Immigration and Naturalization Service drawn under the said section 245 of the Immigration and Nationality Act provided:

"§ 245.1 * * * A special non-quota visa shall not be held to be available under section 15 of the act of September 11, 1957, unless the alien, having been admitted as a nonimmigrant visitor or student prior to April 18, 1958, has been allocated such a visa by the Director, Office of Refugee and Migration Affairs, Department of State." 8 C.F.R. § 245.1, 23 Fed.Reg. 6543, 6545.

Inasmuch as none of the plaintiffs had entered the United States as a "nonimmigrant visitor or student" defendant did not then forward their applications to ORMA even though there was no justification in section 15 for the provision in section 245.1 of the Regulations which limited the class eligible for refugee-escapee visas to aliens who had been admitted as nonimmigrant visitors or students. Plaintiffs thereupon instituted this action then containing only the first claim which sought a declaratory judgment establishing that defendant's denial of their right to apply for refugee-escapee visas was illegal and unconstitutional and that plaintiffs were "eligible for such visas and should be permitted to establish their eligibility for a visa under Section 15 on the merits in the same manner permitted other refugees, not similarly discriminated against." Plain-

tiffs' motion for an injunction staying deportation pendente lite was granted on consent of defendant.

Sometime thereafter defendant was advised by the United States Attorney for this District that the limitation in section 245.1 of the Regulations was untenable. Defendant thereupon forwarded plaintiffs' applications to ORMA. The applications of three of the plaintiffs were approved by ORMA. The applications of the remaining plaintiffs were denied on the ostensible ground that they had not proved, as required by section 15, that they had fled from Yugoslavia or Latvia because of persecution or for fear of persecution on account of race, religion or political opinion.

On May 1, 1959, the limitation was formally eliminated from section 245.1 of the Regulations so that it read:

"A special nonquota visa shall not be held to be available under section 15 of the Act of September 11, 1957, unless the alien, having been admitted as a nonimmigrant prior to April 18, 1958, has been allocated such a visa by the Director, Office of Refugee and Migration Affairs, Department of State; * * *." 8 C.F.R. § 245.1, 24 Fed.Reg. 3491.

Plaintiffs thereupon made motions for reconsideration which were denied. In July 1959 plaintiffs, with leave of court, amended their complaint so that it now asks for a judgment declaring with respect to the first claim:

"A. That the denial of their right to apply for 'refugee-escapee' visas is illegal and unconstitutional.

"B. That the plaintiffs are eligible for such visas and should be permitted to establish their eligibility for a visa under Section 15 of [sic] the merits in the same manner permitted other refugees, not similarly discriminated against.

* * * * * *

"E. That defendant be ordered in evaluating the applications to disregard the fact that the plaintiffs entered the United States as seamen."

■ Defendant has no power to issue "refugee-escapee" visas. That is in the hands of the State Department. Wen Cheuk v. Esperdy, D.C.S.D.N.Y., 178 F.Supp. 787. Plaintiffs have therefore abandoned the above-quoted demands for declarations insofar as they involved the State Department and asked "for an examination of the question whether the applications were considered on the merits or whether defendant's eligibility standards *precluded* evaluation on the merits on part of another governmental agency."

■ Plaintiff's claim is that the Regulation's attempted limitation of the benefits of section 15 to nonimmigrant visitors and students was the result of a determination by the Attorney General which was embodied in a direction by the Attorney General to the State Department and that, in spite of the change in the Regulation and in spite of the issuance of visas to three crewmen, the direction was the real basis for the denial of visas to the rest. No matter what the basis for the denial of the visas, that denial may be reviewed by a proceeding brought against the Secretary of State. Plaintiffs here, instead of thus attacking the State Department's refusal of the visas directly, ask, in substance, for a declaration that the alleged action of the Attorney General was the real basis for the State Department's refusal.[2] It is doubtful, to say the least, whether such a declaration made in a suit where the only party defendant was a subordinate of the Attorney General would bind the Attorney General, cf. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, but it is certain that it would not bind the Secretary of State. Johnson v. Interstate Transit Lines, 10 Cir., 163 F.2d 125, 172 A.L.R. 1242. The declaration would thus be a useless thing. Whether or not there is a technical basis for such a declaration, in the exercise of

discretion, I refuse to entertain the application. The first claim is dismissed.

Plaintiffs' second claim alleges that applications which they made to the Attorney General for the withholding of deportation because they feared physical persecution, under section 243(h) of the Immigration and Naturalization Act, 66 Stat. 212, 8 U.S.C. § 1253(h), were denied sometime between March and May 1959 not on their merits as they purported to be but actually because the applicants were crewmen. They ask for the following declarations:

"C. That the denial of their applications for stays of deportation on the ground that they entered the United States as nonimmigrant seamen is illegal and unconstitutional.

"D. That plaintiffs should be permitted to establish their eligibility for stays of deportation in the same manner as other aliens of Yugoslav and Latvian nationality.

"E. That defendant be ordered in evaluating the applications to disregard the fact that the plaintiffs entered the United States as seamen.

"F. That the defendant should be restrained and restraining defendant from taking any of the plaintiffs into custody and deporting them as long as the governments of Yugoslavia and Latvia are Communist dictatorships, or in the alternative, until a final decision is made on the merit of plaintiffs' claims that they will not [*sic*] be subject to physical persecution in Yugoslavia or Latvia."

As above stated, a temporary injunction has been issued on consent.

■■ There is no occasion for the elaborate set of declarations requested. For instance Request C is a loaded question. Defendant strenuously denies that the reason for the denial of the applications for stays was that plaintiffs entered

---

2. While the fact that there is no prayer for an injunction against defendant might not preclude the issuance of an injunction, if warranted, there is no basis for

such issuance here. There is nothing pending before defendant in connection with the visas.

the United States as nonimmigrant seamen. That is no reason, however, why the claim should not be treated as the ordinary application for a declaratory judgment that certain action of the Attorney General in directing deportation was unlawful and for an injunction. See Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583. Plaintiffs are not bound by their prayers for relief even where declaratory judgments are concerned. Cohen v. Randall, 2 Cir., 137 F.2d 441, certiorari denied 320 U.S. 796, 64 S.Ct. 263, 88 L.Ed. 480. No party other than the District Director of the Immigration and Naturalization Service is necessary where it is he who would carry out the order of the Attorney General. Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, supra.

Treating, therefore, the second claim as an application for a declaratory judgment that the Attorney General's refusal of a stay was unlawful and for an injunction, I pass to defendant's motion for summary judgment dismissing it.

Plaintiffs charge here, as they did in support of their first claim, that defendant and his superior, the Attorney General, had a definite policy which controlled their decisions and the decisions of the State Department in the cases of crewmen. So far as the first claim is concerned we have the change in section 245.1 of the Regulations which officially removed the declaration of the Immigration and Naturalization Service that only nonimmigrant visitors and students were entitled to the benefits conferrable under section 15. That regulation as changed, however, not only had no direct application to petitions made under section 243 (h) to the Attorney General with which the second claim is concerned but was not in existence when the decisions denying the petitions were made. Thus there is no such strong record of official intention to include crewmen in the benefits of section 243(h) as there is in the case of benefits under section 15.

Plaintiffs in evident good faith make the serious charge that the decisions of the Attorney General were based upon an ulterior influence rather than the ostensible record. They wish to support this charge with evidence. If they can support it they are entitled to an injunction against the enforcement of the decisions. See Radio Corp. of America v. United States, D.C.N.D.Ill.E.D., 95 F.Supp. 660, 668, affirmed 341 U.S. 412, 71 S.Ct. 806, 95 L.Ed. 1062.

Defendant says that there are no genuine fact issues in the second claim. He says that the administrative records of plaintiffs who applied for the withholding of deportation, which defendant has submitted on this motion, are too specific to be met by the mere "hypothesis and speculation" which plaintiffs offer in answer. Plaintiffs argue that the records are irrelevant unless compared with the records of applicants who were not crewmen and that plaintiffs are unable to submit affidavits in opposition to defendant's motion because "the facts necessary for plaintiffs' case are contained in the general records of the defendant and known to a limited number of officers of the Immigration and Naturalization Service."

Plaintiffs' contention that the records are irrelevant is without foundation. The records of the plaintiffs who applied for withholding of deportation and have not withdrawn their applications or asked that they be held in abeyance [3] reveal that an officer of the Immi-

---

3. It is possible that some plaintiffs have not exhausted their administrative remedies with respect to the grievances alleged in the second claim, but defendant declines to make an issue of this saying: "If there is any substance with respect to the allegations in the second cause of action, we are not disposed to suggest that because these plaintiffs did not proceed to exhaust their remedies and to proceed to final determination, they would not have standing to sue. See, Joint Anti-Facist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 819. On the other hand, however, if it be shown by the defendant that there is no merit to the allegations of the complaint and that those applications which have resulted in final orders were decided on their merits with-

gration and Naturalization Service conducted an examination of each applicant and filed a "Memorandum and Recommendation of Special Inquiry Officer". In all but one of the cases which have been acted upon by the Regional Commissioner of the Immigration and Naturalization Service, the Special Inquiry Officer wrote out findings and conclusions and recommended denial of the application, and the Regional Commissioner stated that "upon consideration of the entire record" the application was denied. In the one remaining case, that of Giovanni Stroligo, the Special Inquiry Officer recommended granting the application, but the Regional Commissioner ordered denial and detailed his reasons for so doing. The contents of these records have a clear tendency to show that the applications were determined on the merits. Each applicant's claim of physical persecution was thoroughly discussed and evaluated by the Special Inquiry Officer in his statement of findings and conclusions and also by the Regional Commissioner in the case of Giovanni Stroligo. The fact that the applicant was a crewman was mentioned in each "Memorandum" but there is not the slightest indication that the applicant was discriminated against because of that fact. A shadowy inference that the Special Inquiry Officer who prepared the "Mémorandum" in the case of Ante Spaleta was perhaps influenced in his decision by the manner in which Spaleta had entered the United States might be drawn from the statement in his "Memorandum" that Spaleta had "entered the United States in deliberate evasion of the immigration laws of the United States".

Whatever this inference is worth, however, it would go only to the question of whether the legality of his entry was considered and would not be probative of the claim that his application was denied because of his occupation as a crewman.

■ Plaintiffs claim, however, that, if they are permitted to take the depositions of the Commissioner of Immigration and Naturalization or a deputy designated by him, of defendant or a deputy designated by him, and of other persons whose identity is still to be determined, they can obtain evidence to support their claims. Knowledge of the facts may, as plaintiffs claim, be exclusively or largely under the control of defendant and, until plaintiffs have had an examination of defendant and/or those closely associated with him, I do not wish to foreclose the possibility of their establishing their claims. See Peter Pan Fabrics, Inc. & Henry Glass & Co. v. Dixon Textile Corporation, 2 Cir., 280 F.2d 800. I therefore grant plaintiffs' cross-motion, pursuant to Rule 56(f), for an opportunity to take depositions on condition that plaintiffs complete the discovery requested in their "Notice of Motion Under Rule 56(f), F.R.Civ.P." within 90 days after the appearance of a note of this decision in the New York Law Journal. Otherwise the cross-motion is denied and defendant's motion directed to the second claim is granted.

Defendant argues that plaintiffs' cross-motion should not be allowed "without the sanction of Rule 56(g) and 28 United States Code, Section 1927". The text of these provisions is set out in the margin.[4]

---

out regard to the applicant's manner of entry into the United States, then those plaintiffs who have not reached the final administrative stage have no cause for complaint and the balance of the plaintiffs in whose cases final orders have entered must be denied relief as a matter of law."

4. "56 * * * (g). *Affidavits Made in Bad Faith.* Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay,

the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

"§ *1927. Counsel's liability for excessive costs*

"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof

If defendant means that these sanctions should be made available to him so that he may seek to have them applied, my assistance is not needed since by the rule and statute they already are available. If he is asking that I apply the sanctions, I am not persuaded that they should be applied at this moment, and whether they should be applied later must abide the event.

Settle order on notice.

See also 22 F.R.D. 306.

who so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously may be required by the court to satisfy personally such excess costs."