Paul Werner AKLIN, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 62, Docket 28801.

United States Court of Appeals Second Circuit.

Argued Oct. 13, 1964.

Decided Jan. 15, 1965.

Morris Elder Vogel, New York City, for petitioner-appellant.

Jerome C. Ditore, Asst. U. S. Atty., New York City (Joseph P. Hoey, U. S. Atty., for Eastern District of New York, George L. Barnett, Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

MOORE, Circuit Judge:

Aklin, a Swiss citizen, arrived in the United States in 1939 and on April 17, 1941, declared his intent to become a United States citizen. On October 13, 1941, he was inducted by the Selective Service System into the United States Armed Forces. At the date of Aklin's

induction, section 3(a) of the Selective Service Act of 1940, 54 Stat. 885, 50 U.S.C. App. § 303(a),* did not provide an exemption from military service for neutral aliens. Two months after Aklin's induction (December 20, 1941) section 3(a) was amended (55 Stat. 844, 50 U.S.C. App. § 303(a), 1940 ed. Supp. II), to allow neutral aliens to claim exemption on the grounds of alienage.[1] The amendment provided further that such an exemption would be granted only if requested prior to the alien's induction and that the filing of such an application would forever bar the applicant from United States citizenship.

Pursuant to Aklin's request, on December 23, 1942, the Swiss Minister to the United States requested the State Department to discharge him from the armed forces under the alienage exemption procedure set out in section 3(a). By this time Aklin had been on active duty with the Armed Forces for a little over a year and had been promoted to sergeant.

On February 18, 1943, Aklin made a written application to his commanding officer for discharge on the ground that he was a citizen of Switzerland.[2] On May 13, 1943, Aklin was discharged from the armed forces with the notation on his discharge papers that he had been discharged for the "convenience of the Government * * * reconsideration of classification due to alienage."

Subsequent to Aklin's discharge, on July 14, 1943, his local draft board classified him as 1–A, i. e., available for immediate induction and informed him that he would be inducted soon thereafter unless he executed Form 301.[3] Aklin sought reclassification to enter a defense industry but the local board reiterated the need to file Form 301 to obtain exemption. The Swiss Minister also advised Aklin to file for exemption. On September 9, 1943, Aklin executed Form 301 and surrendered his Declaration of Intent to become a United States citizen. On September 14th he was classified as IV–C, i. e., exempt on the ground of alienage.

On December 27, 1946 Aklin filed a petition for naturalization in the United States District Court for the Southern District of New York. He later testified before a hearing examiner for the United States Immigration and Naturalization Service in support of his petition before the district court. His petition was denied by the district court on November 21, 1949, on the ground that his execution of Form 301 made him ineligible for citizenship under § 3(a).

In 1952 Congress passed a new Immigration and Nationality Act.[4] Section 315(a) of the 1952 Act, 66 Stat. 242, 8 U.S.C. § 1426, provides in part that "notwithstanding the provisions of section 405(b), any alien who applies or who has applied for exemption or discharge from training or service in the Armed Forces * * * on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States." Thus, to be barred under section 315(a), an alien had

---

* Now 50 U.S.C.A. App. § 454(a-.

1. References to section 3(a) will be throughout to the 1941 version of this section.

2. He also stated " * * * at the time of my induction I attempted to file a DSS Form #301." In this he must have been mistaken because this form came into being subsequent to Aklin's induction as a result of the exemption privilege granted pursuant to the December 20, 1941 amendment.

3. Form 301 was the official application under section 3(a) for exemption on the ground of alienage. See note 2, supra. Despite his prior reference to his execution of Form 301, there is nothing in the record to show that Aklin was discharged pursuant to a Form 301 application or that he ever filed such a form prior to September 9, 1943.

4. This Act represents a comprehensive revision and codification in one statute of the then existing laws concerning immigration and nationality scattered through the United States Code.

to file an application for an exemption *and* be afforded effective relief from military service. Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583 (1957).

On June 7, 1960, Aklin filed his present petition in the United States District Court for the Eastern District of New York but was again denied citizenship on the basis of his 1943 exemption from military service. He now appeals from this denial.

 Exemptions from military service could be granted under section 3(a) only if an application were filed *prior* to induction. From this, Aklin argues that the operation of the debarring provisions of section 3(a) depended upon a timely application and that he was exempt but not debarred as a result of his discharge.

However, the full benefits of section 3(a) were contingent upon imposition of its corresponding disabilities. Aklin's liability for military service continued after his discharge and his subsequent exemption from induction on September 14, 1943 on the basis of his execution of Form 301 thus debarred him from citizenship under section 3 (a).

The government contends that section 315(a) of the 1952 Act has retroactively superseded section 3(a) and that this case should be decided under this more recent legislation. However, it is unnecessary to determine the precise situations where section 315(a) can be given retroactive application since Aklin's pre-existing disability under section 3(a) is expressly preserved by sections 405(a) and 1101(a)(19) of the 1952 Act. United States v. Hoellger, 273 F.2d 760, 763, n. 3 (2d Cir. 1960).

Considering the high value which we place upon our own citizenship—a feeling apparently shared by those who seek it—the courts have been more than re-luctant to deprive aliens of this privilege. Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583 (1957). But the facts here presented leave no doubt that, knowing the price to be paid as fixed by Congress, Aklin deliberately elected to accept his exemption from further military service and secured the full benefits of his decision.[5]

Affirmed.

5. Communications between Aklin and his draft board prior to his execution of Form 301 and the record of the 1947 proceedings before the Immigration and Naturalization Service show that Aklin clearly understood the effect of the steps he took to secure his exemption.