**In re Petition for Naturalization of Julian CERF.**

**No. 120241.**

United States District Court
D. New Jersey.

May 10, 1967.

Elmer Fried, New York City, for petitioner.

Sam I. Feldman, Immigration & Naturalization Service, Los Angeles, Cal., for Designated Naturalization Examiner. Joseph J. Tricarico and Herman Kaner, Gen. Attys, Newark, N. J., for Immigration and Naturalization Service.

## OPINION AND ORDER

WORTENDYKE, District Judge:

The Designated Naturalization Examiner of the Immigration and Naturalization Service submitted to this Court on October 5, 1966 Findings of Fact and Conclusions of Law with his recommendation that Petition for Naturalization, No. 120241, filed by Julian Cerf on February 2, 1965, be denied on the ground that petitioner failed to establish that he is not barred from naturalization by Section 315 of the Immigration and Nationality Act (8 U.S.C. § 1426), and Section 4(a) of the Universal Military Train-

ing and Service Act, 50 App. U.S.C. § 454(a).

Petitioner, born June 9, 1902, at Puttelange, Moselle, France, has resided continuously in the United States since his lawful admission thereto for permanent residence on December 31, 1940. He had signed and sworn to an application for immigration visa (quota) before the United States Vice Consul in Paris, France on September 5, 1940. *The entire contents of the application are in the English language, and petitioner certified therein, under oath, that he was able to speak, read and write that language.* He filed his Petition for Naturalization on February 2, 1965, under Section 316(a) of the Immigration and Nationality Act, 8 U.S.C. § 1427(a). On August 24, 1942, petitioner had requested DSS Form 301 (Application by Alien for Relief from Military Service from his Local Draft Board 11 at Hackensack, New Jersey. The form was completed and submitted to the Board. The Board accordingly classified petitioner 4–C on November 11, 1942, having initially classified him 1–A on August 1, 1942. On September 24, 1943 petitioner attempted, by letter, to withdraw Form 301 from the Draft Board but was informed that no provision existed permitting such withdrawal. Petitioner was never inducted into nor did he serve in the armed forces of the United States.

At a continued preliminary examination before the Examiner on July 15, 1965, petitioner produced two witnesses, viz., his wife, Marian W. Cerf, and one Charles A. Kaufman, a relative through marriage. The substance of the testimony of these witnesses tended to create a doubt respecting petitioner's ability to read or understand English at the time his DSS Form 301 was filed, and to indicate that the wife either dictated, or wrote out for petitioner to copy, the answers to the questions contained in the Selective Service Forms which petitioner signed and caused to be filed with his Local Board. She testified that petitioner was not aware, because she intentionally kept him in ignorance, that he would be debarred from United States citizenship by his execution of DSS Form 301 and failure to serve in the United States' armed forces.

If petitioner voluntarily and understandingly executed and filed DSS Form 301, and permitted it to remain on file, and was exempted from military service to the United States, he was debarred from citizenship under Section 4(a) of the Universal Military Training and Service Act, supra. In re Rego's Petition, 289 F.2d 174 (3 Cir.1961); Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); Ceballos v. Shaughnessy, 352 U.S. 599, 606, 77 S. Ct. 545, 1 L.Ed.2d 583 (1957). *Ceballos* holds that permanent ineligibility for citizenship requires that the alien applied for exemption from military service and also that he was relieved from such service. As a resident alien, petitioner would not have been exempt from military service unless he claimed that exemption pursuant to the provisions of 50 App. U.S.C. § 454(a). Since such a claim of exemption was allowed, and the petitioner was relieved from military service, his ineligibility for citizenship would be a necessary consequence of his execution and filing of the claim for exemption, provided the claim was knowingly filed by petitioner and he was fully aware that, by filing the same, he would be permanently debarred from citizenship. The records of the Selective Service System conclusively disclose that the petitioner was relieved from liability for training or service because he was an alien; see 8 U.S.C. § 1426(b). The evidence is clear that an application for exemption from such service was filed in behalf of petitioner upon the ground that he was a resident alien. Petitioner's attempt to withdraw the DSS Form 301 on September 24, 1943, was unsuccessful. He was aware on that date of its contents and of the effect of its filing.

Pursuant to 8 U.S.C. § 1447, a final hearing upon petitioner's contested petition for naturalization was held in open Court before the writer of this Opinion,

at which the petitioner appeared through his attorney, as did the Special Hearing Examiner in behalf of the Immigration and Naturalization Service. At this hearing arguments were presented to and considered by the Court with respect to the petition and the Examiner's findings and recommendations. The hearing was continued for the purpose of enabling the petitioner to adduce additional evidence in support of his petition. Besides his own testimony, petitioner presented that of his wife, Marian Cerf.

Upon that testimony I find the following facts: At the age of 12, petitioner studied at a school in which English was taught for two hours a week, and French was taught for equal periods. His instruction in the English language extended over a period of a year or a year and a half. *When he applied to the American Consul in Paris for his immigration visa, on September 5, 1940, he stated under oath that he was able to speak, read and write English.* He entered the United States for permanent residence on December 31, 1940. He had been married in 1938 to his present wife, a native of the United States who, in addition to her native tongue, spoke French fluently as a result of having attended school in Europe. Subsequent to *his arrival in the United States, petitioner registered as a resident alien under the Selective Service Law, and was furnished by his Local Board with certain documentary forms, printed in the English language, which he was called upon to complete and sign.* He states that he did not read the contents of the documents which he signed, but that the questions contained therein were translated by his wife from English to French and that he gave his wife, in turn, the answers in French to the questions which she had translated to him from the English. Petitioner was aware that he had been registered for military service. On August 24, 1942, petitioner signed and swore to the truth of the contents of DSS Forms 301 (Application By Alien For Relief From Military Service) and 304 (Alien's Personal History And Statement) which had been mailed to petitioner by his Local Board on August 17, 1942. In Form 301 it was stated that petitioner was a citizen of France, without an alien registration number, who had arrived in the United States December 31, 1940. Petitioner further represented that France was a neutral in the then current war, adding:

> "I do hereby make application to be relieved from liability for training and service in the land or naval forces of the United States, under the Selective Training and Service Act of 1940, as amended, in accordance with the act of Congress approved December 20, 1941. I understand that the making of this application to be relieved from such liability will debar me from becoming a citizen of the United States. I *have not* filed a declaration of intention to become a citizen of the United States."

The foregoing italicized words "have not" were inserted by typewriter in a blank space left in the printed form for the insertion of a negative or positive statement in the last quoted sentence. DSS Form 304 was signed and sworn to by the petitioner. It is stated that his previous military service had been for the Republic of France. Annexed to DSS Form 301 is a letter signed by the petitioner, bearing his Paris address and dated August 24, 1942, in which he relates that he was taken prisoner of war by the Germans in France shortly before the Armistice was signed and sent to a prison camp in Alsace from which he escaped on July 23, 1940. He further states in the letter that, if he should again bear arms, reprisals might be taken against his parents who were then living in Occupied France and dependent entirely upon petitioner for support. The letter also states that petitioner's resources in France were wiped out and that he entered the United States "to start all over again", adding that he will have heavy obligations to fulfill in France after the termination of the War since not only his parents but his entire

family had been ruined and were then being supported by friends to whom petitioner recognized an obligation of repayment. Petitioner urges the foregoing reasons in justification of his unwillingness to enter the United States' armed forces and, as a citizen of a neutral country, applies for exemption and requests DSS Form 301. The letter was typed by petitioner's wife. Upon receipt of Form 301 from the office of the Local Board, petitioner and his wife took it to their home, and the wife filled it out or told the petitioner what to write in it because, as he says, he always asked her what the questions meant. In signing this form, which was filled out by his wife and signed by the petitioner, it was the petitioner's intent to obtain thereby an exemption from military service, and in signing the form petitioner adopted what his wife had typed on it. Petitioner however testified at the Hearing before me that he did not realize that by signing the form in question he would lost his right to obtain United States citizenship. He also testified that his wife did not disclose to him that such would be the consequence of his request for exemption from military service.

At the time of the Hearing, petitioner was 64 years of age, and was retired from employment after having been previously employed as a travelling salesman of merchandise for a period of 15 years, from 1923 to 1938. He denied however that during the period of his business activities he ever had occasion to sign any document. Petitioner admitted that on Selective Service Form DSS Form 40 he had written in his own hand this statement: "The factory which I own has been working with one of the large chemical houses, Eastman Kodak, Rochester, on a new development for the Philadelphia Quartermaster which is now being adopted, and I expect a war contract very shortly." Moreover petitioner signed his affidavit in compliance with the direction contained in the form that "If the registrant cannot read the questions, his answers thereof shall be read to him by the officer who administers the oath." He swore to that affidavit on June 29, 1942 before James F. Merrill, a Notary Public of New Jersey.

Marian Cerf, called as a witness for the petitioner, testified that she was born in New York City on September 7, 1910, where she attended school until she reached the age of 16 and then went abroad to finishing school for a year in Switzerland. She returned to the United States in 1927, where she attended Simmons College in Boston for a year. Thereafter she entered journalism and the waterproof textile business in the United States. She married the petitioner in 1938. She testified that when she departed for Europe to be married, she left her business in the hands of her father, who was then retired, and that upon her return to the United States at the end of 1940, her business was not in as flourishing a condition as when she left. Prior to the time of her return to the United States, her husband had been taken prisoner by the German occupying military forces when the French Army surrendered to the Germans in 1940; and she had assisted him in his escape from their custody. The details of her experience and that of her husband in his successful escape are embodied in a narrative document which was admitted in evidence upon the Hearing. Petitioner's wife frankly admitted that she deliberately concealed from her husband the notice, contained in the form which she induced him to sign seeking exemption from military service, which stated that by requesting such exemption he would be permanently barred from United States citizenship. In explanation of her conduct, she stated that her husband's German captors were not aware that he was a Jew, and that the mental, moral and physical suffering to which he had been subjected rendered him in no condition to resume military service. She insisted that her husband was dependent upon her for his understanding of the consequences of the application which he was making for exemption from military service in the United States. She admitted that the form

which she induced him to sign contained a request to be exempted from military service, but asserted that, by reason of his previous status as a prisoner of war of the Germans, it was possible that reprisals might be taken against his parents, who were then living in Occupied France. Petitioner's wife conceded that it was through her assistance and cooperation and with her aid that her husband was advised of some of the contents of the various forms which he signed or was induced to sign and file with the Local Board, but that she told him nothing about the consequences of his application for exemption from military service. She said she told him "part of the truth, but not all of the truth."

Although the wife of the petitioner said the petitioner entered the United States with no money, she put in his name the business factory which she owned and operated and which represented a $25,000 investment of her own money. She did this, she says, to permit her to operate the sales portion of her business while her husband ran the manufacturing portion thereof. When the time arrived at which her husband would be eligible to apply for citizenship, which was two years after his arrival in the United States, he inquired of his wife whether he could become a citizen and what he should do to achieve that status. Then, for the first time, his wife told him the whole truth.

At the conclusion of the hearing, decision upon the petition was reserved, and leave granted to counsel for the respective parties to submit briefs in support of their respective contentions.

The eligibility of petitioner for naturalization depends upon his credibility, and that of his wife, before the Designated Naturalization Examiner and before this Court. *The sole ground upon which petitioner bases his contention here that he should be admitted to citizenship is to be found in his assertion that his ignorance of the English language prevented his understanding that the granting of his application for relief from military service in the armed forces of the United States would debar him of the right to naturalization.* I cannot believe petitioner's testimony that he was ignorant of the English language to the extent which he claims in view of his previous education and business experience. In his sworn statement in his application to the United States Consul for a visa on September 5, 1940 he stated that he could read, write and speak the English language. This fact renders incredible petitioner's testimony that, when he executed DSS Form 301 two years later, he was unable to understand the plain language of the contents of the form which he then signed and swore to. If it be assumed that the form was filled out by his wife on the basis of her misrepresentation to him of the language of the form and the response thereto which he adopted, his oath in verification thereof reflects a collusive conspiracy between his wife and himself to mislead the representatives of Government.

As recently as April 28, 1967, there was filed in the United States Court of Appeals for the Third Circuit an Opinion written by Judge Freedman of that Court in the case of the Petition of Haniatakis, 3 Cir., 376 F.2d 728, which reversed the District Court's finding that the petitioner was entitled to naturalization. In *Haniatakis,* the petitioner gave false answers both in her written application and in her Petition for Naturalization, and the same false statements were given orally as testimony at the preliminary investigation upon the presented issue as to the materiality or immateriality of the false testimony. The Court of Appeals held that:

"The statute is not concerned with the significance or materiality of a particular question, but rather, as the Supreme Court has recently indicated in Berenyi v. District Director, intends that naturalization should be denied to

one who gives false testimony to facilitate naturalization. * * *

The reason for denying naturalization whenever false testimony is given in an attempt to gain it goes beyond a judgment that one who gives false testimony to deceive the government is by that fact unworthy of the privileges or citizenship; it is also based on the practical ground that a false answer to a query which on its face appears innocuous may effectively cut off a line of inquiry which might have revealed further facts bearing on the petitioner's eligibility for citizenship."

In Berenyi v. Immigration Director, 385 U.S. 630, 636–637, 87 S.Ct. 666–670, 17 L.Ed.2d 656 (1967) the Supreme Court held that:

"* * * when an alien seeks to obtain the privileges and benefits of citizenship, * * * [h]e is the moving party, affirmatively asking the Government to endow him with all the advantages of citizenship. Because that status, once granted, cannot lightly be taken away, the Government has a strong and legitimate interest in ensuring that only qualified persons are granted citizenship. For these reasons, it has been universally accepted that the burden is on the alien applicant to show his eligibility for citizenship in every respect. This Court has often stated that doubts 'should be resolved in favor of the United States and against the claimant.'"

Admission to citizenship is a privilege. The burden of proving entitlement thereto rests upon the petitioner. The present petitioner has failed to discharge that burden. Consequently, the recommendation of the Designated Naturalization Examiner, that the Petition for Naturalization be denied, is accepted and concurred in, and it is so ordered, on this 10th day of May, 1967.