**Application of Samuel MIRZOEFF, Petitioner for Citizenship.**

**UNITED STATES of America, Respondent-Appellant,**

**v.**

**Samuel MIRZOEFF, Petitioner-Appellee.**

**No. 170, Docket 24853.**

United States Court of Appeals
Second Circuit.

Argued Feb. 10, 1958.

Decided March 12, 1958.

Roy Babitt, Sp. Asst. U. S. Atty., for the Southern Dist. of New York, New York City (Paul W. Williams, U. S. Atty., and Harold J. Raby, Asst. U. S. Atty., S.D.N.Y., New York City, on the brief), for appellant.

Louis A. Breier, New York City, for appellee.

Before HINCKS and LUMBARD, Circuit Judges, and GALSTON, District Judge.

HINCKS, Circuit Judge.

The appellee, a native of Russia and a citizen of Iran, entered the United States for permanent residence in November 1941. As a male alien residing in the United States, he registered under the Selective Training and Service Act of 1940, as amended, 50 U.S.C.App., former § 301 et seq., 54 Stat. 885, 55 Stat. 844. He was classified 1–A. Thereafter, on July 6, 1943, while Iran was still a neutral nation in World War II, appellee by executing DSS Form 301 applied to be relieved of military service because of his alienage. However, his application was not reached for processing until three months later and by that time Iran had become a cobelligerent. The appellee was then classified 1-A(L) as available for limited service only. In November 1943 he was rejected for induction because of an insufficient quota for limited service registrants. In November 1944 he was classified IV-F because limited service registrants were no longer being inducted. In September 1945 he was classified IV-A, because then overage for any military service.

The appellee was never classified IV-C as a neutral alien who sought relief from military service and never in fact obtained such relief because of his alienage.

The appellee filed a Declaration of Intention to become a citizen on November 4, 1944. On March 24, 1947 he filed his petition for naturalization under the Nationality Act of 1940, former 8 U.S.C. § 707(a), 54 Stat. 1137.* In 1956, when the petition came on for hearing, the Government opposed on the ground that the appellee was permanently debarred from citizenship under § 3(a) of the Selective Training and Service Act of 1940, as amended, the provisions of which had been re-enacted in the Universal Military and Training Act of 1948, 50 U.S.C.A.Appendix, § 454, 62 Stat. 605. The petition was granted on June 27, 1956 in an opinion reported in 143 F.Supp. 177 and the Government has brought this appeal.

It is true that § 3(a) of the Selective Training and Service Act of 1940 [1] provided that one who in the manner prescribed made an application for relief from liability for military service became "thereafter * * * debarred from becoming a citizen," irrespective of whether he was ever classified as exempt or in fact relieved from service because of alienage. Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 1 L.Ed.2d 583.

---

* Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1427(a).

1. Selective Training and Service Act of 1940 (54 Stat. 885), as amended (55 Stat. 844).

"Sec. 3(a) (50 U.S.C.App. former § 303(a)) Except as otherwise provided in this Act, every male citizen of the United States, and every other male person residing in the United States, who is between the ages of twenty and forty-five at the time fixed for his registration, or who attains the age of twenty after having been required to register pursuant to section 2 of this Act, shall be liable for training and service in the land or naval forces of the United States: *Provided*, That any citizen or subject of a neutral country shall be relieved from liability for training and service under this Act if, prior to his induction into the land or naval forces, he has made application to be relieved from such liability in the manner prescribed by and in accordance with rules and regulations prescribed by the President, but any person who makes such application shall thereafter be debarred from becoming a citizen of the United States: * * *"

However, as was pointed out in the opinion below, this provision of the Selective Training and Service Act is in conflict with § 315(a) [2] of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1426(a),[3] which provided that ineligibility for citizenship should attach to aliens who (1) had applied for exemption and (2) had actually been relieved from such service. This two-pronged bar to citizenship, although in certain respects more broadly stated than § 3(a) of the Selective Training and Service Act, In re Skender's Petition, 2 Cir., 248 F.2d 92, certiorari denied, Skender v. U. S., 355 U.S. 931, 78 S.Ct. 411; cf. Ballester v. United States, 1 Cir., 220 F.2d 399, certiorari denied 350 U.S. 830, 76 S.Ct. 62, 100 L.Ed. 741, was in substance less drastic. And § 315(a) spoke in the past, as well as the future, tense thus disclosing an intent that its two-pronged bar should apply retroactively.

The Act of 1952, in § 403(b), 66 Stat. 280, 8 U.S.C.A. § 1101 note, provided that "[e]xcept as otherwise provided in section 405, all other laws, or parts of laws, in conflict or inconsistent with this Act are, to the extent of such conflict or inconsistency, repealed." We think that § 3(a) of the Selective Training and Service Act was thereby repealed to the extent that it contained a more drastic bar to naturalization than that of § 315(a).

Our conclusion that the two-pronged bar of § 315(a) of the 1952 Act was in-

tended to apply to this case is fortified by its prefatory phrase which gives it application "[n]otwithstanding the provisions of section 405(b)" of the 1952 Act. For by § 405(b), 8 U.S.C.A. § 1101 note, it was provided generally that "Except as otherwise specifically provided in title III, any petition for naturalization heretofore filed which may be pending at the time this Act shall take effect shall be heard and determined in accordance with the requirements of law in effect when such petition was filed." Thus under § 405(b), standing alone, the appellee, whose petition had been pending since 1947, would have been debarred from naturalization under § 3(a) of the Selective Training and Service Act of 1940, as amended. Benzian v. Godwin, 2 Cir., 168 F.2d 952, certiorari denied 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425. But the provision of § 315(a) that it should apply *notwithstanding* § 405(b) quite clearly manifested an intent that a petition for naturalization filed before, but determined after, the enactment of the 1952 Act should be dealt with under the law in effect when the petition should be decided. Cf. Shomberg v. United States, 348 U.S. 540, 75 S.Ct. 509, 99 L.Ed. 624.

Our conclusion is not in conflict with the definition contained in § 101(a) (19) of the Act of 1952, 8 U.S.C.A. § 1101(a) (19).[4] At first glance this definition might seem to imply the continuing vitality of § 3(a) of the Selective Training

---

**2.** Immigration and Nationality Act of 1952. 8 U.S.C.A. § 1426, 66 Stat. 163.

"Sec. 315(a). Notwithstanding the provisions of section 405(b), any alien who applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National Security Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States.

"(b) The records of the Selective Service System or of the National Military Establishment shall be conclusive as to whether an alien was relieved or discharged from such liability for training or service because he was an alien."

**3.** This Act, for brevity, will hereafter be referred to as the 1952 Act.

**4.** Immigration and Nationality Act of 1952. 8 U.S.C.A. § 1101(a), 66 Stat. 163.

"Sec. 101.(a) As used in this Act—

"(19) The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), * * * or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts."

and Service Act as a bar to naturalization. A closer reading of the paragraph, however, shows it to recognize that a mere application for relief from military service under the Selective Training and Service Act might not constitute a literally permanent bar to naturalization. For the definition attaches to the "individual who is, *or was at any time*,[5] permanently debarred from becoming a citizen." The italicized phrase imports that a mere application for relief under the Selective Training and Service Act, although a bar when made, may thereafter cease to be a bar to naturalization. That is just what happens under § 315(a) of the 1952 Act when, as in this case, the application for relief did not result in the granting of relief. It well may be that § 101(a) (19) of the 1952 Act manifests the continuing vitality of § 3(a) of the Selective Training and Service Act, not for purposes of § 315(a) of the 1952 Act with which it is in conflict, but only for purposes of other provisions of the 1952 Act with which it is not necessarily in conflict. Thus Congress in 1952, for purposes of § 212(a) (22) of the 1952 Act, 8 U.S.C.A. § 1182(a) (22), which provides that one ineligible for citizenship under § 3(a) of the Selective Training and Service Act shall be excluded from admission to the country, may have thought that the drastic war-time bar of the 1940 Act was still appropriate even though, by 1952, for purposes of naturalization a less drastic bar was considered consistent with public policy.

The decision below was in accord with United States v. Bazan, 97 U.S.App.D.C. 108, 228 F.2d 455, and Ballester v. United States, supra. It was not inconsistent with Ceballos v. Shaughnessy, supra. Nor is the disposition which we reached in conflict with Petition of Coronado, D.C.E.D.N.Y. 132 F.Supp. 419, affirmed 2 Cir., 224 F.2d 556. Although that case, like this, was decided after the effective date of the 1952 Act, the petitioner there,

unlike Mirzoeff, not only had applied for relief but also had obtained relief. Consequently his petition was barred even under the 1952 Act and was rightly denied.

Affirmed.

LUMBARD, Circuit Judge (dissenting).

I do not read the 1952 Act to mean that aliens who prior to the effective date of that Act signed DSS Form 301 applying to be relieved of military service because of their alienage were granted an amnesty if they were not also actually relieved of such service by reason of some clerical act on the part of a draft board. In view of the clearly expressed national policy with regard to those who enjoyed what our country had to offer and at the same time chose not to render military service at a time before 1952 when such service was generally far more hazardous and necessary, I would rest on the definition of those "ineligible to citizenship" as controlling. Thus § 101(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101(a):

> Sec. 101.(a) As used in this Act—
>
> "(19) The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any treaty relating to military service, an individual who is, *or was at any time, permanently debarred from becoming a citizen of the United States* under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), * * * or under any section of this Act, or any other Act, or under any law amendatory of, supplementary to, or in substitution for, any of such sections or Acts." (Emphasis supplied.)

As Mirzoeff executed DSS Form 301 on July 6, 1943, while Iran was still neu-

---

5. Comparable language was not included in the definition of the term "ineligible to citizenship" provided in the 1945 amendment (59 Stat. 551) of § 28 of the Immigration Act of 1924, former Title 8, U.S.C. § 224(c). It was under that 1945 amendment that Benzian v. Godwin, supra, was decided.

tral, by that very act he became ineligible for citizenship. In the absence of an unambiguous expression by the Congress of an intention to lift the bar which clearly lay across Mirzoeff's path to citizenship for nine years, I think what he did in the dark days of July 1943 disposes of the matter.

I would reverse the order of the District Court.