**Petition of Pedro Carlos HARISPE for Naturalization.**

**No. 41474.**

United States District Court
D. Maryland.

Dec. 14, 1961.

Julius G. Maurer, Baltimore, Md., for petitioner.

F. Alfred Petersam, Naturalization Examiner, Baltimore, Md., for the Government.

CHESNUT, District Judge.

On January 27, 1960 Pedro Carlos Harispe, then and still now a citizen and subject of the Argentine Republic, South America, filed a petition in this court for naturalization. The Examiner found the facts stated in his petition and as a result of other examination, found facts sufficient to oppose the granting of the petition on the ground that in 1942, while then lawfully in this country, he had filed a request for exemption from the Selective Service Act, claiming to be an alien citizen of a neutral country. The statute at that time (Sec. 3(a), Selective Training and Service Act of 1940, 54 Stat. 885 as amended by 55 Stat. 844 *) provided in pertinent part that—

"Except as otherwise provided in the Act, every male citizen of the United States and every other male person residing in the United States, who is between the ages of twenty and forty-five at the time fixed for his registration, or who attains the age of twenty after having been required to register pursuant to Section 2 of this Act shall be liable for training and service in the land or naval forces of the United States: Provided, That any citizen or subject of a neutral country shall be relieved from liability for training and service under the Act if, *prior to his induction* into the land or naval forces, he has made application to be relieved from such liability in the manner presented by and in accordance with the rules and regulations proscribed by the President, but any person who makes such application shall *thereafter be debarred* from becoming a citizen of the United States   *   *   *." (Italics supplied.)

The applicant engaged counsel of his own selection to contest the opposition of the Examiner and oral testimony, with

* Now 50 U.S.C.A.Appendix, § 454.

exhibits, was heard in court and the Examiner and counsel for the applicant have both filed briefs which the court has considered. The Examiner still opposes naturalization.

From the evidence in the case I find:

1. That on December 31, 1940 the petitioner was admitted into the United States for permanent residence and he has continued to reside here since then with only one or two brief intervals.

2. In July 1942 the petitioner registered with Local Draft Board No. 8, located at 1772 Columbia Road, Washington, D. C.

3. On August 25, 1942 the petitioner took and passed a physical examination and was classified 1A.

4. On August 26, 1942 the petitioner filed DSS Form 304 "Alien's Personal History and Statement". (G.Ex.No.1–3) In it he stated that he had no objection to serving in the land or naval forces of the United States.

5. On November 4, 1942 he received notice to report for induction in the Army on November 16, 1942. (G.Ex.No. 1–5)

6. On or about November 9, 1942 the petitioner filed DSS Form 301 "Application by an Alien for Relief from Military Service". (G.Ex.No.1–6)

7. That same day, November 9, 1942 he directed a letter to Local Board No. 10 reading as follows:

"I acknowledge receipt of the order for my induction in the United States Army and according to the law I had fulfilled Form 304 and did not refuse to be called having a great admiration for this country.

"But I am an Argentina citizen and I risk to lose my nationality if I become an American soldier.

"My intention is to return to Argentina where my family is and my property and my friends.

"I decided therefore to fulfill Form 301, never having had intention of becoming an American.

"In case I acquired citizenship and would be more than five years absent from this country in the future, I would lose such citizenship and would not have nationality at all.

"Could you be so kind as to consider my case having in view that I wish to remain Argentinian and intend to return shortly to Argentina." (G.Ex.No.1–4)

The evidence shows in more circumstantial detail that just prior to this writing to his Local Board, the applicant had conferred with a Diplomatic representative of the Argentine in Washington and the letter to the Local Board was pursuant thereto and that the applicant's position was then deliberate and intentional as to his status and intentions as to citizenship.

8. On November 16, 1942 the petitioner reported for induction at the Board's place for induction which was in the basement of a schoolhouse in Washington where he met there in charge of what was going on, a military sergeant and he told the sergeant that he was told to report for induction and the sergeant looked over his list and said "I do not have your name on my list". Presumably that meant that the Draft Board had furnished the sergeant with a list of the names of persons who were instructed to appear on that date and that Harispe's name was not on the list. Harispe as a witness here for himself says that the sergeant then told him "You can go on home. You will be notified later," and that he did then go on home and he heard nothing further from the Board along that line.

9. On June 10, 1943 Harispe was denied a permit to leave the United States to travel to Argentina.

10. On October 5, 1943 he was granted a six months' permit to visit Argentina. (P.Ex.No.2) That permit stated in part, "This is to certify that *Pedro Carlos Harispe* Order No. 10609, Serial No. T–698, Class 4, Division C–H a registrant of this local board has applied for a permit to depart from the United States, and this local Board being convinced that the

registrant's absence is not likely to interfere with the proper administration of the selective service law, hereby authorizes the said registrant to depart from the United States and to remain absent therefrom for *six months, or until April 5, 1944.*"

The regulations with respect to class 4–C, as of that date, provide:

"(a) In Class IV–C shall be placed any registrant:

"(2) Who is an alien and who is a citizen or subject of a neutral country (see s. 601.2) and who, at any time prior to (i) his induction into the land or naval forces of the United States, or (ii) his assignment to work of national importance under civilian direction, files with his local board an Application by Alien for Relief from Military Service (Form 301) executed in duplicate. * * *" C.F.R.1943 Supp., title 32, s. 622.43, s. (2), effective October 1, 1943.

11. On March 14, 1944 Harispe returned to the United States and by letter of April 10, 1944 notified Local Board No. 8 of the District of Columbia, of his residence in Denver, Colorado. In that letter he said (P.Ex.No.5)

"Dear Sirs. For Whom it may Concern:

"I came back from Argentina by the Argentinian Ship S. S. Rio de Laplata through the port of San Pedro, California, on the last March 14, 1944.

"My actual residence is Denver, Colorado. My address is 'Pedro Carlos Harispe, Denver, Colorado'. I am a citizen of the Argentine Republic, and I am 42 years old. My order No. is 10.609. I was classified lately '4C(H)'." (Italics supplied.)

12. On September 14, 1945 Harispe received a postal card notice reading "Notice of Reclassification Pedro Carlos Harispe, Order No. 10.609 has been classified 4A by the Local Board". (P.Ex. No.3)

13. In Harispe's "Application To File Petition for Naturalization" (G.Ex.No. 2), filed November 27, 1959, prior to his formal petition for naturalization which was filed January 27, 1960, he stated and signed under oath in answer to question 15:

"Q. Were you ever *exempted* from service because of conscientious objections, alienage or other reasons? (Italics supplied.) A. Yes

"Q. If Yes state reasons A. Alienage".

14. March 31, 1960 the Immigration and Naturalization Service of the Department of Justice requested the District of Columbia Director of Selective Service to inform them as to answers to certain questions from the official records of the Selective Service System regarding Harispe. April 1, 1960 the Director replied giving the official record. (G.Ex. No.1–2) The material questions were:

"Q. 1. Did registrant claim exemption or relief from military service or training? A. Yes

"Q. Was registrant relieved from military service or training on such ground? A. Yes

"Q. 2. What was or is the registrant's classification? A. 8/25/42—1–A, 10/5/42—4–C, 9/14/45—4–A".

See also of similar effect P.Ex.No.4

In some of the exhibits in the case there is reference, apparently from the files of Selective Service regarding Harispe, to notations of his having been classed 1–A, 1–A(H), IV–C, IV–C(H), and IV–A, at various times. Of all these various letter classifications the important and most significant one is his reclassification as of October 5, 1943 as IV–C. The reference of 1–A and IV–A have no significance with relation to alienage and the letter (H) is descriptive of age. By Executive Order No. 9279 (7 F.R. 10512), U.S.Code Cong.Service 1942, p. 1831 the President *suspended the induction* of all men over the age of 38, but this was not contrary to the requirements of the general Act on the subject with regard to *exemption from liability* from service because of neutral alienage. (Italics supplied.) Thus, 1–A in 1942 meant available for military service.

C.F.R.1943, Cum.Supp. title 32, Ch. VI, s. 622.11. 1–A(H) in June 1943 meant available for military service (id.), and that the registrant was identified as being over 38 years of age and under 45. C.F.R.1943, Cum.Supp. title 32, Ch. VI, s. 622.81, effective March 6, 1943. IV–C (H) on October 5, 1943 meant a registrant who was an alien and who had filed with his local board an Application for Relief from Military Service (Form 301), C.F.R.1943, Cum.Supp. title 32, Ch. VI, s. 622.43, ss. (2), effective October 1, 1943, and meant that the registrant was identified as being over 38 and under 45 years of age, C.F.R.Cum.Supp.1943, title 32, Ch. VI, s. 622.81. IV–A in October 1943 meant registrant deferred by reason of age who had obtained the 45th anniversary of the day of his birth, C.F.R.1943, Cum.Supp. title 32, Ch. VI, s. 622.41, effective January 1, 1943; IV–A on September 14, 1945 meant registrant deferred by reason of age, registrant who had attained the 26th anniversary of the day of his birth. C.F.R.1945, Cum. Supp. title 32, Ch. VI, s. 622.41, effective August 31, 1945.

It thus appears that after Harispe wrote to the Local Board in 1942 as above stated, he was *reclassified* by the Board as 4–C, meaning an alien not subject to military service under the Selective Service Act. It does not appear that since writing the letter asking exemption and after being so reclassified he has ever been reclassified as subject to the Selective Service Act; nor has he in fact been inducted at any time or required to be inducted into the military service. And it does not appear that after the reclassification in 1945 in the chronology above recited he has ever requested any change in classification by the Local Board. And it does not appear that he has taken any further action with regard to his status as an alien until the filing of his application for a petition for naturalization on November 27, 1959. Very shortly theretofore he had married an American citizen and was professionally engaged as a teacher in the schools of Baltimore County, Maryland.

■ The naturalization law of 1952 (8 U.S.C.A. § 1426) now provides that "The records of the Selective Service System or the National Military Establishment *shall be conclusive* as to whether an alien was relieved or discharged from such liability for training or service because he was an alien." (Italics supplied.) I do not find an express direction to this effect in the statute as in force in 1942; but in any event it is my opinion that the records of the Local Board in 1942 and other years chronologically referred to, should be taken as prima facie good evidence with respect to their regularity and accuracy; and I have found nothing in the case to require a contrary rule of evidence. It is my opinion, upon this detailed review of the applicant's record with the local Selective Service Board in prior years, that it showed clearly that in consequence of his request to the Local Board for exemption by virtue of alienage, a citizen of a neutral country at the time, the Argentine Republic, he was given exemption as an alien and that there was not thereafter any significant change in his status in that respect. I conclude, therefore, as the statute then in force expressly provides, that he became *ineligible* thereunder for citizenship on a petition for naturalization. It was so held by the Supreme Court in Ceballos v. Shaughnessy, 352 U.S. 599, 604, 77 S.Ct. 545, 1 L. Ed.2d 583 (1957). Compare the earlier case of Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 658 (1951) decided on very different facts. And I understand counsel for the petitioner does not dispute this proposition as to the effect of the Selective Training and Service Act of 1940. But he contends that the later Act of Congress in 1952 retrospectively controls the matter to the contrary.

■ The particular provision of the Immigration and Nationality Act of 1952, effective December 24, 1952, here relied on by the petitioner reads (8 U.S.C.A. § 1426):

"Notwithstanding the provisions of section 405(b) of this Act, any alien who

applies or has applied for exemption or discharge from training or service in the Armed Forces or in the National [Guard] Training Corps of the United States on the ground that he is an alien, and is or was relieved or discharged from such training or service on such ground, shall be permanently ineligible to become a citizen of the United States." And I note that in referring to the 1952 Act Mr. Justice Brennan, writing the opinion of the Court in the case of Ceballos v. Shaughnessy, 352 U.S. 599, 77 S.Ct. 545, 549, 1 L.Ed.2d 583, referred to the 1952 Act in the following language:

"Section 315 of the 1952 Act enacts a two-pronged requirement for the determination of permanent ineligibility for citizenship: The alien must be one 'who applies or has applied for exemption,' and also one who 'is or was relieved or discharged from such training or service on such ground.' That section has no application here. The 1952 law had not been enacted when the petitioner applied for relief from deportation in 1951 and by its terms is expressly made inapplicable to proceedings for suspension of deportation under § 19 of the Immigration Act of 1917 pending, as here, on the effective date of the 1952 law."

The argument of counsel for the petitioner here is that the 1952 Act being retrospective in operation, controls the case and that the Government in opposing the naturalization has not affirmatively shown that (1) the petitioner did make the application for exemption (which is no longer disputed) and (2) that he was relieved or discharged from such training or service *on such ground*. In the Ceballos case the court did not discuss any question as to the alleged retrospective nature of the 1952 Act but counsel for the petitioner here contends that its retrospective character was later adopted and applied in a case in the Second Circuit—"Application of Mirzoeff", 253 F.2d 671 (1958). And it is also to be noted that there was a strong dissent by Circuit Judge Lumbard in that case. And reference should be made to a later

case in the Second Circuit, "Application of Hoellger", 2 Cir., 273 F.2d 760 (1960) where, if the retrospective feature of the Mirzoeff case is not questioned as applied to the facts of that case, the question is much more fully discussed and the holding in the later case apparently put on different grounds than those relied on by Circuit Judge Hincks. See also the very elaborate and classified collection of cases in an appendix to the opinion in the Hoellger case. Furthermore it is important to note that the facts in the Mirzoeff case are materially different from those in the present case with respect to whether the petitioner had in fact been exempted by the Selective Service Board. An important difference of facts is that in the Mirzoeff case there was no evidence that the petitioner had been relieved from service because exempted; he had never been reclassified by the Board as 4-C; see 253 F.2d 671-2 (1958); while in the instant case Harispe was reclassified as 4-C and that he was so notified at the time is affirmatively shown in this case; and that in fact when he filed his first preliminary application for naturalization he stated that he had been so exempted.

The facts of the instant case are, therefore, similar to the facts in the Petition of Coronado, 224 F.2d 556 (2 Cir., 1955), affirming 132 F.Supp. 419, where it was held the petitioner was not eligible for naturalization by reason of his former exemption on the ground of alienage. The distinction between the two cases is clearly recognized in a paragraph in the opinion of Judge Hincks, Application of Mirzoeff, 2 Cir., 253 F.2d 671-674, as follows:

"Nor is the disposition which we reached in conflict with Petition of Coronado, D.C.E.D.N.Y., 132 F.Supp. 419, affirmed 2 Cir., 224 F.2d 556. Although that case, like this, was decided after the effective date of the 1952 Act, the petitioner there, unlike Mirzoeff, not only had applied for relief but also had obtained relief. Consequently his petition was barred even under the 1952 Act and was rightfully denied."

See also the earlier case in the Second Circuit, Velasquez v. United States, 241 F.2d 126 (1959) affirming 139 F.Supp. 790; Brownell v. Rasmussen, 98 U.S. App.D.C. 300, 235 F.2d 527 (1956).

After considering these several cases I think it must be said that whether the Act has a retrospective effect must be considered very doubtful. There is strong argument to be made in support of the proposition that Congress did not intend to make the 1952 Act retrospective in operation. At least the two Acts must be read together as they are clearly in pari materia. And I think that the two when read together show that it was not the intention of Congress to make the 1952 Act controlling in that respect. We have seen that under the 1940 Act, prior to the 1952 Act, the petitioner became ineligible for naturalization thereafter. His present contention is that by the 1952 Act his disqualification for naturalization was retrospectively repealed. I cannot accept that view of the matter. The 1940 Act provided in clear language that his voluntary and intentional *application* for exemption was of itself sufficient to *thereafter* debar him from naturalization. And I think it also very important to note that in the 1952 Act (now codified 8 U.S.C.A. § 1101, subsection (a) (19) under the heading of "Definitions" as to eligibility of citizenship, we find it provided:

"The term 'ineligible to citizenship,' when used in reference to any individual, means, notwithstanding the provisions of any Treaty relating to military service, an individual who is, or was at any time, permanently debarred from becoming a citizen of the United States under section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), or under section 454 (a) of Appendix to Title 50, or under any section of this title, or any other Act, or under any law amendatory of, supplemental to, or in substitution for, any of such sections or Acts." And it will be noted that the significance and importance of this provision of the 1952 Act was strongly emphasized by Circuit Judge Lumbard in his dissent in the Mirzoeff case, supra.

But perhaps even more importantly for the decision in this case, however it may ultimately be authoritatively decided whether the 1952 Act can be treated retrospectively for the purposes of this case, and assuming that it should be so considered, nevertheless I conclude that on the facts of this particular case the Government has affirmatively shown not only that the petition for exemption was the voluntary and intentional act of the petitioner, but also that the exemption asked for was in fact affirmatively granted by the Local Board in Washington. And there can be no question in the case but that the petitioner himself not only fully understood the effect of his application for exemption at the time he made it, but also he had the same understanding of his action when he first filed his application for leave to file a petition for naturalization in 1959. In that paper signed and sworn to by himself, and partly in his own handwriting, he stated that he had been exempted from service on account of his application based on "alienage".

Counsel for the petitioner in his brief seems to argue that the records of the Selective Service Office are ambiguous or uncertain because Harispe was at times referred to as "4–C(H)", and thereby stressing the supposed uncertainty of classification by emphasizing the letter (H); but on this point, as I think has been clearly shown, the "H" has no significance because it was merely a short descriptive index with regard to age and had no reference whatever to *alienage* or *exemption* from service.

Counsel for the petitioner also urges some considerations of an equitable nature, particularly in that, other than the ineligibility based on the prior exemption from service, the petitioner is by occupation and his history here in the United States otherwise within the requirements of the Nationality Act; and also because, it is argued, that very probably in view of his age at the time he would never actually have been called

for induction. However, under the applicable law and facts of this case, I do not feel that I can grant the request for citizenship by reason of what, in my opinion, is the plain command of the statute, and therefore the petition for naturalization must be *denied* because I find and conclude that the petitioner was debarred from citizenship under the 1940 Act and was also debarred if the two-pronged test of the 1952 Act is here applied. And it is so ordered by the Court this 14th day of December 1961.