**In re Petition for Naturalization of Vilis Martins LAPENIEKS.**

**No. 254443.**

United States District Court
S. D. California,
Central Division.

Dec. 6, 1965.

Gross & Eisenstein, by Edgar F. Gross, Los Angeles, Cal., for petitioner.

William H. Karp, Gen. Atty. (Nationality), Immigration and Naturalization Service, U. S. Dept. of Justice, Los Angeles, Cal., for the Immigration Service.

CRARY, District Judge.

Petition for naturalization of Vilis Martins Lapenieks is opposed by the Immigration and Naturalization Service on the grounds petitioner is ineligible for citizenship by reason of having applied for and received exemption from military service, Section 315(a) of the Immigration and Nationality Act [8 U.S.C. § 1426(a)].

Petitioner was born in Latvia on November 10, 1931, and entered the United States for permanent residence in January, 1952. During the summer of 1952 he was registered for Selective Service and in October of that year was classified I–A by Board No. 47, Miami, Florida. He made written application for exemption on grounds of alienage on November 15, 1952 (Pet.'s Ex. B) and was re-classified IV–C on November 20, 1952 (Pet.'s Ex. C). In June, 1953, petitioner was advised that if he continued to claim exemption he would be ineligible for citizenship (Pet.'s Ex. D and Govt.'s Ex. 1). Petitioner informed his Board he desired to continue ineligible.

In April or May, 1957, petitioner's draft Board informed him that Local Board Memorandum No. 39 (Pet.'s Ex. A), under which his exemption had been granted, was rescinded on March 1, 1956, and that he was again classified I–A (Pet.'s Ex. E). After a pre-induction physical examination on August 20, 1957, (Govt.'s Ex. 2), petitioner was, on about October 10, 1957, advised by his draft Board that he was classified IV–F.

By his claim to exemption and exemption pursuant thereto, petitioner avoided service in the Korean conflict which spanned the period between June 25, 1950 and July 1, 1955. In re Naturalization of Bergin, D.C., 173 F.Supp. 883 at 885.

The Naturalization Service has denied the petition for naturalization, filed September 6, 1963, based on the provisions of Section 315(a) of the Immigration and Nationality Act of 1952 [8 U.S.C. § 1426(a)].

The decisions are not uniform in their interpretation of the statutes here involved. The court, in In re Naturalization of Cuozzo, 235 F.2d 184 (CA 3, 1956), reversed the decision of the trial court granting petition for naturalization, stating at page 185:

"We see no way of making the statute mean anything but what it says. * * * If, as has been suggested, administrative practice has been to refrain from insisting upon denial of citizenship to those aliens who do in fact serve their turn in the armed forces, that administrative practice cannot alter the explicit direction of the statute."

In the Cuozzo case, an alien had claimed exemption in December, 1950. Thereafter the law was amended to withdraw a permanent resident alien's right to such exemption from military service. He then was classified I–A but found to be not physically acceptable.

The District Court of Minnesota, in Petition of Bergman, 173 F.Supp. 880 (1959), held that the petitioner, an alien, who claimed exemption from military service, was permanently ineligible for citizenship, and his subsequent request for induction did not remove the bar. At page 883 the court quotes from Gilligan v. Barton, 265 F.2d 904 (CA 8, 1959), as follows:

" 'The question whether eligibility to citizenship should be restored to men, such as [Bergman], who took advantage of their alienage to escape the draft, and now wish to avoid the legal consequences of what they did,

is a question for Congress and not for the courts.'"

Bergman claimed exemption from military service as an alien in April, 1942. In 1943, he contacted his draft Board and requested he be inducted into the service. In February, 1944, he was found physically unfit and classified IV-F.

In In the Matter of Cerati, 160 F.Supp. 531 (D.C.N.D.Cal.1957), the District Court in California held Cerati barred from citizenship although he subsequently served in the Armed Forces. He claimed exemption from military service in 1954. In January, 1956, petitioner filed with his local Board request for voluntary induction claiming he misunderstood his application for exemption. He was thereafter inducted into the United States Navy. In referring to Section 315(a) of the Act, the court states, at page 532 of its opinion:

"The statute makes no provision for the restoration of eligibility for citizenship in the event an alien, who has been granted exemption from service, subsequently enters the armed forces. Nothing has been called to the attention of the Court which would indicate that the Congress intended that an exempted alien may regain his eligibility for citizenship by service in the armed forces at such time as he sees fit."

Petitioner, in the instant matter, relies in chief on three cases, to wit: United States v. Lacher, 299 F.2d 919 (CA 9, 1962); United States v. Hoellger, 273 F.2d 760 (CA 2, 1959); and Cannon v. United States, 288 F.2d 269 (CA 2, Dec. 1960).

In United States v. Lacher, supra, the petitioner, a German alien, applied for exemption under the provisions of a treaty with Germany and was classified IV-C in March of 1954. In October, 1954, following abrogation of the treaty, Lacher was re-classified I-A and inducted into the Army on May 28, 1956. In June of 1960 Lacher filed a petition for naturalization under Title 8 U.S.C. §

1427. The District Court granted citizenship over the objection of the Examiner. The District Court and the Court of Appeals, as authority for their respective decisions, relied on In re Rego's Petition, 289 F.2d 174 (CA 3, 1961); Cannon v. United States, supra, and United States v. Hoellger, supra. In all of those cases, the petitioner, after claiming exemption from military service by reason of being an alien, *served in the Armed Forces.*

By reason of the decision of the Court of Appeals, 9th Circuit, in the Lacher case, supra, this court would be bound to grant the pending petition if the facts in the instant matter are not to be distinguished from those in the Lacher case.

In the Lacher case, as noted above, the petitioner applied for the exemption in 1954, *after* the effective date of Section 315(a), to wit, December 24, 1952, whereas in the case at bar the application for and the exemption were both accomplished prior to the effective date of Section 315(a). It is to be noted that the petitioner was fully advised in October, 1952, that his exemption from military service by reason of his being an alien would act as a permanent bar to his becoming a citizen of the United States (Govt.'s Ex. 4, pages 5 and 6). It is also to be noted that in the pending matter the petitioner was re-classified I-A and found to be physically unfit for service in 1957, some 5 years after his exemption. These points will be commented on in more detail infra.

Since our Court of Appeals relied on Rego, Cannon and Hoellger cases, supra, the facts and circumstances in those cases will be discussed. In all of those cases the alien actually served in the Armed Forces of the United States.

The petitioner in Rego, supra, 289 F.2d 174, was exempted on his application therefor and re-classified IV-C in 1951. This was an *erroneous classification* because the petitioner had been lawfully admitted to the United States for permanent residence in 1947, and the Universal Military Training and Service

Act (1948), 50 U.S.C., Appdx. 454(a), 456(a), effective in 1951, provided:

"That any male alien * * * who has remained in the United States in a status *other than that of a permanent resident* for a period exceeding one year * * * shall be liable for training and service in the Armed Forces * * * except that any such alien shall be relieved from [such] liability * * * if, prior to his induction into the Armed Forces he has made application to be relieved from such liability * * *." (Emphasis ours.) Page 176.

At pages 176–177 of its opinion, the court ruled that since only aliens *not* in permanent residence were privileged to be relieved from military service, that petitioner's exemption was in error because he was in the same Selective Service category as a citizen. The court notes at page 176 that Section 4(a) of the 1948 Act (Section 454(a), 50 U.S.C. Appdx.), supra,

" * * * debarred certain aliens from becoming citizens if they merely made application for relief from military service because of foreign citizenship."

With respect to Rego's ineligibility under Section 454(a), carrying over as a bar to naturalization after the 1952 Act (Section 315(a)), the court, again at page 176, refers to Hoellger, supra, observing:

"For present purposes we assume, but do not decide, that any status of ineligibility which arose before 1952 under the earlier statute would persist despite the retroactive language of Section 315(a) of the 1952 Act."

The case of United States v. Hoellger, 273 F.2d 760 (CA 3, 1960), involved a petition for naturalization by a German alien who entered the country on December 3, 1951. He soon registered for military service pursuant to 50 U.S.C. Appdx. Section 453. In the summer of 1952 he was classified I–A. On September

ber 11, 1952, his Board, on its own initiative, re-classified petitioner IV–C (alien exempt by treaty). In May, 1953, after the 1952 Act (Section 315(a)) became effective, the Board, *again on its own initiative,* sent Appellee Hoellger a form application for exemption as an alien although it was questionable that the Board had power to exempt the petitioner who was a permanent resident in December, 1951 (273 F.2d page 761, footnote 1). Hoellger completed the form and returned it to the Board and was classified IV–C until February, 1955, when he was re-classified I–A by reason of the abrogation of the treaty with Germany. It appears that Hoellger, by his *own* application, was exempt from May, 1953, to February, 1955. He was inducted into the Armed Forces in April, 1955, served his full term and was honorably discharged in April, 1957 (page 762). In August, 1957, he applied for citizenship. The parties in the Hoellger case agreed that his eligibility for citizenship was to be determined by Section 315(a). In holding the petitioner eligible for citizenship and that there had to exist *both* application for exemption and effective relief from service, the court states at page 762:

"An alien who has actually served in the Armed Forces under compulsion of the executive branch of the Government cannot be said to have been effectively relieved from service. Moreover, the cases the Government cites do not support the proposition that under Section 315(a) eligibility for citizenship is lost despite the fact of military service re-*sulting from involuntary induction.*"

In distinguishing the cases cited by the Government as noted in footnote 2, page 762, the court observes that in three of the four cases cited the applicant did not enter the Armed Forces. The court also observes (footnote 2) that in the Cerati case, supra, 160 F.Supp. 531 (D.C.N.D.Cal.1957),

"Cerati was active in seeking relief from military service, and his term of service resulted from volun-

tary induction at a time when it served his own convenience, not at a time chosen by his Local Board, supra, 160 F.Supp. at page 532. In contrast Hoellger served without protest at a time and under circumstances chosen for him by his Local Board."

In the case at bar, the petitioner was not inducted because of physical unfitness. Again referring to footnote 2, 273 F.2d page 763, of the Hoellger case, the court states:

"An alien who postpones induction by means of an application for exemption, and who is thereafter rejected for physical disability, may legitimately be said to have been relieved from military service by virtue of his exemption application. This results from the fact that the physical disability may have arisen between the date the alien would have been inducted but for the obtaining of the exemption and the subsequent date on which induction is ordered."

Although, in the Hoellger case, the parties agreed that eligibility for citizenship was to be determined under Section 315(a), in footnote 3, page 763, the court discusses the question of the effect of Section 315(a) of the Act on an alien who applied for exemption *prior* to December 24, 1952, the effective date of the Act. Section 405(a) and 405(b) of the June, 1952, Act (footnote 8, U.S.C. § 1101) are discussed at some length in footnote 3 and Section 405(a) is there set forth in full. These sections are referred to by the court as "savings clauses." The court thereafter (footnote 3) says:

"One must conclude that the matters listed in 405(a) are protected from the changes wrought by 315 (a). Even though it be argued that an interpretation that 315(a) can only apply prospectively nullifies the provision permitting retrospective application of matters within 405 (b), the argument fails because a

contrary interpretation would nullify the clear intent to leave 405(a) unaffected. * * *

"Assuming this interpretation of the interrelationship of 504(a) and 315(a) to be correct, ineligibility for citizenship because of prior application for exemption from military service would certainly appear to be a 'status' or 'liability' 'done or existing, at the time this Act shall take effect.' * * * [Citing cases] * * * Accepting this argument one might conclude that the consequences of an application for exemption made prior to December 24, 1952 are unaffected by 315(a)."

Section 405(a) [Title 8, U.S.C. 1101 footnote] of the Act of June 27, 1952, provided, in part, that the 1952 Act should not affect, among other things, " * * * any status, condition, * * * act, * * * obligation or matter, civil or criminal, done or existing at the time this Act shall take effect; * * *." The Section further provides that all such acts, conditions, status, and so forth, under the statute repealed by the 1952 Act are " * * * hereby continued in force and effect."

The Court of Appeals, 2nd Circuit, in Cannon v. United States, supra, 288 F.2d 269, points out the similarity of the facts in that case to those in the Hoellger case (273 F.2d page 271). It is to be noted that in both cases there was no written request signed by either alien involved until May, 1953, *after* the effective date of Section 315(a) on December 24, 1952. In the Hoellger case, the petitioner was exempted *on the Board's own initiative* and in the Cannon case the exemption was on the application of the Irish Ambassador (288 F.2d page 271 and footnote 1, said page). So it appears that in both of those cases there was no application by the alien for exemption until after December 24, 1952, whereas in the instant matter the application for exemption (Pet.'s Ex. B) was signed by the petitioner before December 24, 1952. See also Govt.'s Ex. 4, page 5.

In the Cannon case the alien, a citizen of Ireland, entered the United States for permanent residence in February, 1952. On the request of his Ambassador that he be exempt from Service as an alien, he was classified IV–C on September 11, 1952. In May, 1953, Cannon himself made written application for continuation of the exemption. On November 8, 1954, he asked that his exemption be withdrawn and in November, 1956, he was drafted and served his full two years. At page 270 of the opinion, the court refers to a portion of its opinion in the Hoellger case re the effect of application for exemption *prior* to the 1952 Act (Section 315(a)), as follows:

"In Hoellger we fully explored the purpose and intent of Section 315 (a) of the 1952 Act and its interrelationship with its predecessor statutes, Section 3(a) of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 303 (a), and Section 4(a) of the Selective Service Act of 1948, 50 U.S.C.A. Appendix, § 454(a). We pointed out that Section 315(a) had modified these prior acts. We showed that, prior to the 1952 Amendment, an alien's application for exemption from military service could be sufficient, without more, permanently to disqualify him from citizenship. This could be sufficient irrespective of any subsequent events or change of circumstances."

This court, for the reasons noted above, concludes that the case at bar is to be distinguished from the Lacher, Rego, Hoellger and Cannon cases, supra.

Petitioner herein also relies on In re Kadich, 221 F.Supp. 353, S.D.N.Y. (1963). Kadich's application for exemption was granted although he was *not* an alien qualified for exemption. Exemption was later withdrawn by reason of that fact and petitioner was called for duty but rejected as physically unfit. The court held he was not debarred from citizenship where the exemption was withdrawn because petitioner was not qualified for the exemption in the first instance.

Each case must be decided, to some extent at least, on the particular facts involved. It would appear, since the petitioner herein applied for the exemption which was granted to him prior to the effective date of Section 315(a), that his application for exemption was sufficient to bar him from citizenship though he had actually served in the Armed Forces after 315(a) became effective on December 24, 1952.

In In re Harispe, D.C., 200 F.Supp. 627, Harispe, a citizen of the Argentine Republic, applied for exemption in November, 1942, and was re-classified IV–C. He was never inducted into the military service. In 1959 he applied for naturalization. Petitioner's counsel argued that the 1952 Act (Section 315(a)) operated retrospectively. In holding that the Act is not retrospective in nature, the court, at page 632 of its opinion, said:

"There is strong argument to be made in support of the proposition that Congress did not intend to make the 1952 Act retrospective in operation. At least the two Acts must be read together as they are clearly in pari materia. And I think that the two when read together show that it was not the intention of Congress to make the 1952 Act controlling in that respect. We have seen that under the 1940 Act, prior to the 1952 Act, the petitioner became ineligible for naturalization thereafter. His present contention is that by the 1952 Act his disqualification for naturalization was retrospectively repealed. I cannot accept that view of the matter. The 1940 Act provided in clear language that his voluntary and intentional *application* for exemption was of itself sufficient to *thereafter* debar him from naturalization."

Although Section 315(a) may be said to be determinative of the question, it is reasonable to conclude that Congress may well have been of the opinion that an

alien who refuses service in the Armed Forces of this country by applying for exemption on that ground does not have the qualities desired of a citizen although the exemption for alienage was subsequently abandoned or the provision for the exemption abrogated. The provision in Section 315(a) that the applicant who makes application for exemption on the ground that he is an alien, if relieved from military service on that ground, " * * * shall be permanently ineligible to become a citizen of the United States" does not impose the interpretation that a remanding of the exemption rule is tantamount to elimination of the "permanent ineligibility." Section 315(a) does not provide that the applicant must be *permanently* relieved from such service. The petitioner here was certainly "effectively" relieved from military service, where he was allowed to carry the exempt classification from November, 1952, to April, 1957, during a substantial portion of which period he avoided the prolonged conflict in the undeclared Korean War. The nature of the duty of the members of our Armed Forces during the Korean Campaign is a matter of common knowledge. This court concludes the relief from military service during the period covered herein was effective relief from service within the meaning of Section 315(a), or under any other standard. It does not appear to this court that it is for it to say what action Congress should have taken, if any, by way of renewing eligibility for citizenship on the remanding of the alien exemption provisions referred to in Section 315(a) [8 U.S.C. 1426(a)]. Congress could have easily made provision for aliens who had claimed exemption to become again eligible for citizenship on the remand of the exemption rights, but it did not do so.

As stated by the District Court in In re Rego, 185 F.Supp. 16, D.C.N.J. (1960), reversed on other grounds, 3 Cir., 289 F.2d 174, supra:

"It is quite true that the above differing Congressional statutes covering this subject matter—the Selective Service Act and the McCarran Act—have resulted in many difficulties, not to say personal hardships. But, when all is said and done, it is the duty of the Court to carry out the will of the Congress, not to bow to the bearing of individual hardship. The bearing of personal hardship is solely for the decision of the Congress." (Page 20 of 185 F. Supp.)

The McCarran Act referred to is the Immigration and Nationality Act of 1952.

The petitioner in In re De Campos, 163 F.Supp. 173, D.C.N.J. (1958), registered for military service on October 16, 1940. Pursuant to his written application therefor he was exempted and classified IV–C in March, 1942. Hearing on his application for petition for naturalization was held in July, 1956. On August 24, 1944, De Campos was re-classified I–A and on November 8, 1944, as IV–F, not physically fit for service. After he was classified IV–F De Campos, by letter of November 14, 1944, advised the Naturalization Service he had reconsidered and requested the return of his declaration re exemption. The court, at page 175, states:

"Petitioner's apparent intention to reseek citizenship arose only after he had been classified 4–F and after more than two years of having been accorded an exemption on the basis of alienage. Such late manifestation of intention does not entitle petitioner to the removal of the barrier which he himself has placed in the path leading to citizenship." [Citing cases.]

At page 174 of the opinion, the court quotes Section 315(a) of the 1952 Act and thereafter observes:

"Accordingly, if the petitioner applied for exemption from military service and was actually relieved from such service he has deprived himself of the right to United States citizenship. Application of Mirzoeff, 2 Cir., 1958, 253 F.2d 671."

It is to be noted that in the case at bar the petitioner was classified IV–F in October, 1957, and his petition for naturalization was filed September 6, 1963.

The court concludes that the petitioner herein, for the reasons stated above, is not entitled to citizenship and his petition for naturalization is hereby ordered denied.